J. L. HOLMBERG, AGNES W. CAIN AND RANDOLPH BOLLES,
EXECUTORS AND TRUSTEES OF THE ESTATE OF RICHARD J.
BOLLES, DECEASED, *Appellants*, v. CARY A. HARDEE, GOV-
ERNOR; ERNEST AMOS, COMPTROLLER; RIVERS BUFORD,
ATTORNEY GENERAL; J. C. LUNING, STATE TREASURER,
AND W. A. McRAE, COMMISSIONER OF AGRICULTURE OF THE
STATE OF FLORIDA, AS CONSTITUTING THE TRUSTEES OF THE
INTERNAL IMPROVEMENT FUND OF THE STATE OF FLORIDA,
*Appellees.*

En Banc.

Opinion Filed December 9, 1925.

Petition for Rehearing Denied April 15, 1926.

1. The question, whether a deed which is absolute in form, is
   to be taken as a mortgage, depends upon the intention of the
   parties in regard to it at the time of its execution. This may
   be ascertained from the paper itself, or the instrument in
   connection with contemporaneous writings or agreements con-
   cerning the subject matter, or by the aid of extraneous evi-
   dence which will determine the decision of the question. The
   attitude of the parties relative to the conveyance, after its
   execution, may also be considered.

2. In order to convert a deed, absolute in its terms, into a mort-
   gage, it is necessary that the understanding and intention of
   both parties to that effect should be concurrent and the same.

3. In order for an agreement to reconvey, to operate as a de-
   feasance, there must be a debt or obligation secured by the
   conveyance.

4. "The existence or non-existence of a debt is a distinguishing
   test as to whether a transaction is a conditional sale or a
   mortgage." (Franklin v. Ayer, 22 Fla. 654.)

5. "A feature essential to a mortgage is an indebtedness which
   it is designed to secure. The existence of this is not implied

Holmberg et al. v. Hardee et al. Trustees—Syllabus.

in a provision that a bill of sale shall be void if the grantors shall 'pay' a certain sum of money by a certain day. Payment of money does not necessarily imply a previous binding obligation to pay, but may be made as a recompense or equivalent for some present benefit, *the procurement of which is optional with the payer*." (Italics supplied.) (Smith v. Hope, 47 Fla. 295, 35 South. Rep. 865.

6. "No conveyance can be a mortgage unless made for the purpose of securing a debt or the performance of a duty, either existing at the time of the execution or to be created or to arise in the future."

7. "A definite test to determine whether an absolute deed, executed in consideration of a precedent debt, with an attendant agreement to re-convey the premises to the grantor on payment of the consideration, constitutes a mortgage or a conditional sale is found in the question, whether the debt was discharged by the deed or subsisted afterward. On the one hand, if the conveyance satisfied and extinguished the obligation so that no debt remained due from the grantor to the grantee, it cannot be held a mortgage, since there cannot be a mortgage without something to be secured by it. And in that case the grantor's privilege of refunding the consideration, and so entitling him to a reconveyance, is not to be regarded as an equity of redemption, but is a badge of a conditional sale."

8. "A deed absolute on its face will not be construed as a mortgage, where, after its execution, there remains no indebtedness from the grantor to the grantee." (Doying v. Chesebrough, N. J. Eq., 36 Atl. Rep. 893.)

9. "If it is a debt which the grantor is bound to pay, which the grantee might collect by proper proceedings, and for which the deed of the land is to stand as security, the transaction is a mortgage; but if it is entirely optional with the grantor to pay the money and receive a reconveyance or not to do so, he has not the right of a mortgagor, but only a privilege of repurchasing the property."

10. "If it appears that the deed was accepted in payment and satisfaction of an existing debt, the agreement for reconveyance on payment of a given sum, cannot convert it into a mortgage." (Ibid.)

11. "Though a conveyance of land contained a clause that the grantor was to reconvey the land to the grantee upon receiving a certain sum within a specified time, such fact will not affect the construction of the instrument as a deed with an option to purchase, it appearing that repurchase was optional with the grantor, and that the conveyance was made and accepted in payment of an existing debt." (Bond v. Reed, 96 Mich. 134, 55 N. W. Rep. 619.)

12. "It is an essential ingredient to constitute a mortgage, that both the right to foreclose and the right to redeem should exist; they are co-relative and inseparable." (Chaires v. Brady, 10 Fla. 133.)

13. "There is a test generally accepted as decisive, and this is the mutuality and reciprocity of the remedies of the parties— that is to say—if the grantee enjoys a right reciprocal to that of the grantor to demand reconveyance, personally to compel the latter to pay the consideration named in the stipulation for reconveyance, the transaction is a mortgage while if he has no such right to compel payment, the transaction is a conditional sale.

14. Where a mortgagor, for the purpose of settling and cancelling the mortgage indebtedness, executes and delivers to the mortgagee a deed conveying the fee simple title to the mortgaged property, and the mortgagee in consideration thereof acknowledges payment of the indebtedness, and cancels and surrenders the promissory notes evidencing the indebtedness, together with the mortgage securing their payment, the fact that in the same instrument, or in another instrument contemporaneous therewith, the vendee agreed that upon the payment of a stipulated sum, within a specified time, he would reconvey the property to the vendor, does not render such deed a mortgage, there being, under such circumstances, no debt or obligation for the payment of money secured by the deed.

15. Such a transaction as set up foregoing head note, constitutes the instrument a deed absolute, with an option upon the part of the vendor to repurchase, for the consideration named, and within the time named, or a conditional sale.

16. Before the appellate court will consider objections to testimony taken before a master in a chancery case, the transcript of the record must show that the objections and the motions concerning the admissibility of the testimony were brought to the attention of the court and it should also show the rulings of the court on the objections to a motion to strike testimony.

17. Testimony made incompetent by statute should be disregarded by the trial court and the appellate court.

18. In the absence of positive showing in the transcript of the record that the chancellor below considered the testimony objected to and claimed to be incompetent under statute, we will not presume that the court below did consider the same.

19. Where the competent evidence in the record is sufficient to sustain the decree of the court below, it will not be disturbed on appeal because incompetent evidence appears in the record.

An Appeal from the Circuit Court for Leon County; E. C. Love, Judge.

Affirmed.

*Baker & Baker, S. Bryan Jennings* and *George C. Bedell,* for Appellants;

*J. B. Johnson,* for Appellees.

STATEMENT.

By virtue of the Treaty of Cession dated February 22, 1819, ratified by Spain, October 24, 1820, and by the United

Holmberg et al. v. Hardee et al. Trustees—Statement of Case.

States Senate, February 19, 1821, and confirmed by President Monroe on February 22, 1821 (Territorial Laws, 1823, pages 1 to 4), ratifications being exchanged and proclaimed at Washington, D. C. February 22, 1821, the United States in July, 1821, assumed sovereignty of the territories known as East and West Florida, (Apalachicola Land & Dev. Co. v. McRae, 86 Fla. 393, text 450, 98 South. Rep. 505), and the United States by the Treaty received from Spain "in full property and sovereignty" large areas of high lands and of swamp and overflowed lands in said territories, which lands were retained by the United States when the State of Florida was by Act of Congress, approved March 31, 1845, "admitted into the Union upon equal footing with the Original Thirteen States, in all respects whatsoever," by Act of Congress approved September 28, 1850, the United States granted to the State the whole of the swamp and overflowed lands within the State which then belonged to the United States, the proceeds of said lands, whether from sale or by direct appropriation in kind, to be applied, exclusively, as far as necessary, to the purpose of reclaiming said lands by means of levees and drains. The granting Act of Congress made it the duty of the Secretary of Interior, as soon as may be practicable after the passage of the Act, to make out accurate lists and plats of the granted lands, and transmit the same to the Governor of the State, and at the request of the Governor, cause a patent to be issued to the State therefor; "and on that patent, the fee simple to said lands shall vest in the said State, subject to the disposal of the Legislature thereof." See Byrne Realty Co. v. South Florida Farms Co., 81 Fla. 805, 89 South. Rep. 318; Little v. Williams, 231 U. S. 335, 34 Sup. Ct. Rep. 68; Work v. Louisiana, U. S. 45 Sup. Ct. decided Nov. 23/25.

By an Act of the Legislature approved January 6, 1855,

the State of Florida vested the title to the lands granted
to the State by the Act of Congress, approved September
28, 1850, in five State officers as "Trustees of the Internal
Improvement Fund," with express authority to fix the
price of the lands and to make arrangements for the
drainage of the swamp and overflowed lands, and the
settlement and cultivation of the lands. When the lands
were patented to the State under the Act of Congress, the
title thereto passed to the Trustees of the Internal Im-
provement Fund for the purposes stated in the Legislative
Act of January 6, 1855. Some of the granted lands were
surveyed by the United States authorities and patents
covering surveyed lands that were included in the grant
were issued to the State from time to time. In the lower
part of the peninsular portion of the State of Florida
south of Lake Okeechobee, is an area of several million
acres, that at the date of the Federal grant to the State
in 1850, belonged to the United States, which land in its
entirety consisted of "swamp and overflowed lands, made
thereby unfit for cultivation." This immense area known
as "The Everglades," all being "swamp and overflowed,"
was not surveyed by the United States and consequently
no "accurate lists and plats" thereof were made. On April
29, 1903, Governor W. S. Jennings obtained from the
United States a Patent, No. 137, containing "an estimated
area of 2,862,280 acres" described as "The Everglades,
being swamp and overflowed lands within" stated "metes
and bounds," having reference to Lake Okeechobee on the
North and the waters of the Gulf of Mexico on the South,
and to the survey lines, made by the United States au-
thorities, which survey lines terminated at designated
points both East and West of "The Everglades" where
the higher lands that were surveyed merged into the lower
and unsurveyed lands of "The Everglades." The lands

included in Patent No. 137 being wholly unsurveyed, the Trustees of the Internal Improvement Fund on January 2, 1905, adopted as the "official map of The Everglades, covering the lands embraced in U. S. Patent No. 137," a map upon which the State Land Office "had extended the lines by rule from the surveyed lines on the East and the West side of the Everglades, *which is as near as we can furnish without an actual survey of the*" Everglades. Subsequently the original map was amended, but all of the maps declared to be "official" maps of "The Everglades," were mere protractions on paper across a space representing "The Everglades," of the survey lines that had been made on each side of and terminating at the edges of "The Everglades." Sales of the lands patented to the State by Patent No. 137 covering the unsurveyed lands of "The Everglades," were made to various parties by the Trustees of the Internal Improvement Fund in carrying out the purposes stated in the Legislative Act of January 6, 1855, the lands conveyed by the Trustees to the purchasers being described by designated sections, townships and ranges according to the usual Government system of surveys of public lands as prescribed by Act of Congress, the muniments of title showing that the lands were unsurveyed and that an actual survey to locate the lands described was necessary and was contemplated by those dealing with the title to the lands. Everglades Sugar & Land Co. v. Bryan, 81 Fla. 75, 87 South. Rep. 68; Haran & Horton, 90 Fla. 106 South. Rep.

By a contract dated December 23, 1908, the Trustees of the Internal Improvement Fund covenanted with Richard J. Bolles to convey to the latter about 500,000 acres of the said unsurveyed land described by sections, townships and ranges, being a part of the swamp and over-flowed lands that had been granted to the State by the

Act of Congress approved September 28, 1850, and included in Everglades Patent No. 137. Bolles covenanted to pay for the lands in stated installments of $2.00 per acre, $1.00 per acre of the payments to be used by the Trustees as a separate fund for drainage purposes. It was stipulated that should the Trustees default in applying the drainage payments as agreed, Bolles would be privileged to pay for the lands at $1.00 per acre; and should Bolles default in his payments he could have one acre for every $3.00 paid by him, less the first payment of $50,000,000. The contract contained the following: "It being distinctly understood and agreed between the parties to this agreement that the Trustees of the Internal Improvement Fund are bound to construct said canals hereinafter, described, only so far as the money paid under this contract into a drainage fund will enable said Trustees to so construct said canals, that said Trustees are not bound by these presents, nor shall this contract be construed to require said Trustees to accomplish the drainage or reclamation of any lands, but that the money covered into a drainage fund shall be expended in the effort to accomplish the work hereinafter mentioned." The contract also provided for the privilege of full payments for and releases of the lands at an earlier date than that named in the notes for the purchase price. On December 24, 1908, the Trustees by deed conveyed to Richard J. Bolles 500,000 57/100 "estimated acres," described by designated sections, townships and ranges for a stated consideration of $2.00 per acre. A mortgage dated December 23, 1908, was given by Bolles covering the same lands, to secure the payment of the purchase money notes, including one for $100,000.00 due January 1, 1915, and one for $100,000.00 due January 1, 1916. The contract of December 23, 1908, was expressly referred to and made a

part of the mortgage. In the meantime, to increase the drainage operations, statutory assessments were made upon the lands with others for drainage purposes; and in an agreement between numerous parties interested in the State drainage project dated April 7, 1910, Bolles obligated himself to the Trustees upon stated conditions to pay all the purchase money notes within two years thereafter except the note for $100,000.00 due January 1, 1916, the object being to expedite the draining so as to increase the values and sales of the lands. The purchase of the large acreage was made by Bolles for the purpose of selling to others in small quantities at advanced prices in anticipation of drainage making very fertile lands. For more than a year from about 1911 unfavorable conditions affected the drainage operations and the sale of the lands.

On November 28, 1914, the Trustees of the Internal Improvement Fund and Richard Bolles entered into a contract as follows:

"This Agreement, made and entered into this the 28th day of November, A. D. 1914, by and between Park Trammell, Governor; W. V. Knott, Comptroller; J. C. Luning, Treasurer; T. F. West, Attorney General, and W. A. McRae, Commissioner of Agriculture of the State of Florida, constituting the Trustees of the Internal Improvement Fund of the State of Florida, of the one part, and Richard J. Bolles, unmarried, residing in the County of Duval, in the State of Florida, of the other part.

"Whereas, Heretofore, to-wit, on the 23rd day of December, A. D. 1908, an agreement was entered into between the then Trustees of the Internal Improvement Fund of the State of Florida and the said Richard J. Bolles, whereby, in and for the consideration therein named, the said Trustees agreed to convey to the said Richard J. Bolles certain lands mentioned and described; and

"Whereas, on the 24th day of December, A. D. 1908, the

Holmberg et al. v. Hardee et al. Trustees—Statement of Case.

then Trustees executed and delivered to said Richard J. Bolles a conveyance of the lands referred to and described in said agreement and in the said conveyance; and

"Whereas, on the 24th day of December, A. D. 1908, the said Richard J. Bolles executed and delivered to the then Trustees of the Internal Improvement Fund a mortgage upon the said lands to secure the payment of the unpaid part of the purchase price of said lands as set forth in said mortgage, which said mortgage bears date and is acknowledged on the 23rd day of December, A. D. 1908; and

"Whereas, on the 31st day of January, A. D. 1910, the then Trustees of the Internal Improvement Fund of the State of Florida and the said Richard J. Bolles and others entered into an agreement, in writing, wherein and whereby, in consideration of the matters and things therein stated, among which was the making of a contract or contracts by the said Trustees for the doing of certain drainage work described and the completion of the same in not more than three years, it was agreed among other things that the said Richard J. Bolles should pay all of the notes that he had given to the Trustees for the purchase of said lands within two years on the terms as provided in said agreement, and pay the drainage taxes assessed upon the lands owned by him and those conveyed to him by the Trustees; and

"Whereas, On April 7th, A. D. 1910, the then Trustees and the said Richard J. Bolles and others entered into another agreement, in writing, supplemental to the said agreement of January 31st, 1910, wherein and whereby, in consideration of the matters and things therein stated, among which was the making of a contract or contracts by the said Trustees for the doing of certain drainage work described and the completion of the same in not more than three years, it was agreed among other things that the said Rich-

ard J. Bolles should pay all of the notes that he had given to the Trustees for the purchase of said lands, except that certain note for One Hundred Thousand Dollars due January 1st, 1916, within two years on the terms as provided in said agreement, and pay the drainage taxes assessed upon the lands owned by him and those conveyed to him by the Trustees; and

''Whereas, on the 25th day of June, A. D. 1910, the then Trustees of the Internal Improvement Fund of the State of Florida entered into a contract with the Furst-Clark Construction Company, a corporation existing under the laws of the State of New Jersey, for the construction of the said drainage work mentioned in the foregoing agreements of January 31st and April 7th, 1910, and provided in said contract that said work should be completed within three years from the date of the execution of said contract; and

''Whereas, The said drainage work provided for in said contract to be performed was not completed within the time mentioned in said agreement, which failure to complete said work was due to circumstances and conditions beyond the control of the parties to this agreement; and

''Whereas, The said Richard J. Bolles, by reason of said facts, has been unable to pay the taxes and to make all the said advance payments provided for in said agreements; and

'Whereas, There still remains unpaid by the said Richard J. Bolles to the said Trustees of the Internal Improvement Fund of the State of Florida on said original purchase price for the said lands the sum of Two Hundred Thousand Dollars, represented by two certain promissory notes of the said Richard J. Bolles, one payable according to its terms January 1st, 1915, and the other payable according to its terms January 1st, 1916, each for the sum of One Hundred Thousand Dollars; and certain State, County and Drainage taxes on said lands now due; and

''Whereas, The parties to this agreement desire to affect an adjustment and settlement of the said indebtedness of the said Richard J. Bolles to the said Trustees, therefore this agreement witnesseth:

### 1.

''In consideration of the premises and the agreements and covenants to be performed by the said parties hereto, the said Richard J. Bolles hereby agrees to reconvey to the said Trustees of the Internal Improvement Fund of the State of Florida the portions or remainder of the said lands originally conveyed by the Trustees of the Internal Improvement Fund to the said Richard J. Bolles, and included in the said mortgage from the said Richard J. Bolles to the said Trustees, and not heretofore released by the Trustees from the said mortgage, and more particularly described as follows, to-wit: (Descriptions omitted.)

### 2.

''The said Trustees of the Internal Improvement Fund, in consideration of the premises, agreements and covenants to be performed by the parties hereto, and the said re-conveyance to them by the said Richard J. Bolles of the said lands hereinbefore described, agreed to cancel and return to the said Richard J. Bolles the said two notes and said mortgage hereinbefore described and to assume the unpaid State, County and Drainage taxes upon the said lands.

### 3.

''That said Trustees further agree that they will convey to the said Richard J. Bolles, or his assigns, at his or their request, and on payment by him or them at any time on or before June 1st, 1915, the said lands, as follows:

(a)   In parcels of not less than a section of land on payment in cash to the said Trustees of the sum of Three Dollars per acre.

(b)   On payment by the said Richard J. Bolles, or his assigns, on or before the 1st day of June, 1915, the sum of Two Hundred Thousand Dollars, and of the taxes above mentioned, also the drainage taxes for the year 1915, the said Trustees agree to convey all of the remainder of the said lands not theretofore conveyed to the said Richard J. Bolles under this agreement.

(c)   All payments made by said Richard J. Bolles, or his assigns, to the said Trustees hereunder during said period shall be credited on said amount of Two Hundred Thousand Dollars and said taxes to be paid by said Richard J. Bolles, hereunder.

4.

"It is mutually agreed that whenever the amount paid by the said Richard J. Bolles, or his assigns, on or before June 1st, 1915, shall equal the said sum of Two Hundred Thousand Dollars, and all said taxes, State, County and Drainage, above mentioned, then the said Trustees will convey to said Richard J. Bolles all of said above described lands not theretofore conveyed to him or his assigns, as provided in this agreement.

5.

"It is mutually agreed that time shall be and is of the essence of this agreement, and that this agreement shall be and is binding upon the parties hereto, their heirs, legal representatives, successors and assigns."

On the same date R. J. Bolles, in accordance with the above quoted agreement, executed and delivered to the Trustees of the Internal Improvement Fund of the State of

Florida a deed for all the lands described in his mortgage to the Trustees, dated December 23, 1908, except such as had been previously released from the mortgage, the consideration recited in the deed being "the sum of Ten Dollars, and other valuable considerations moving from the party of the second part to the party of the first part."

After execution and delivery of this deed by Bolles to the Trustees of the Internal Improvement Fund, the Trustees, in carrying out the agreement, and in consideration of the deed, cancelled and surrendered to R. J. Bolles the two notes for $100,000 each, and the mortgage which they held upon the property in question. The cancellation of the mortgage was duly recorded, and the Trustees also paid the delinquent State, county and drainage taxes on the property and redeemed all tax sale certificates.

It also appears that on November 28, 1914, the date of the negotiations leading up to the making of the agreement, and the date of the execution of the deed above referrd to, R. J. Bolles further represented to the Trustees of the Internal Improvement Fund that he was not financially able to pay the drainage tax upon certain other land owned by him and also upon the lands of certain companies in which he was interested, a list of such lands being submitted by him to the Trustees; and that he, the said Bolles, proposed to the Trustees of the Internal Improvement Fund that they arrange with the Board of Commissioners of Everglades Drainage District for the redemption of the drainage tax certificates which had been issued to the Board for such unpaid drainage taxes, and, as evidence of his indebtedness for the sum so advanced, he proffered to give his note for $13,000, and to secure the payment thereof by a mortgage upon the listed property. After considering the matter, the Trustees agreed to arrange for the redemption of the said drainage tax certificates, accept-

ing the notes and mortgage evidencing the indebtedness and securing the payment thereof.

On March 27, 1917, R. J. Bolles died, leaving a last will and testament, in which the appellants herein were named as executors and trustees of his estate.

On October 19, 1919, the appellants, as executors and trustees named under the last will and testament of R. J. Bolles, deceased, filed their bill of complaint against the Trustees of the Internal Improvement Fund of Florida, seeking to have the conveyance made by Richard J. Bolles on November 28, 1914, declared to be a mortgage, and asking that said executors and trustees be decreed the right to redeem the property described in said deed, upon payment of the amount found to be due upon an accounting to be had under the direction of the court.

The bill of complaint and the amendments thereto set forth substantially the matters set up in the foregoing statement. A demurrer to the bill of complaint was overruled. An answer filed by the respondents admitted and explained many of the allegations of the bill of complaint, and denied other allegations. Testimony was taken by the respective parties, and, upon final hearing on bill of complaint, as amended, answer and testimony, the court below rendered a decree dismissing the bill of complaint. From this decree the complainants have appealed.

## OPINION.

CAMPBELL, Circuit Judge.—The appellants have assigned two errors, but each assignment has a number of subdivisions. The first assignment, embracing six alleged errors, may be briefly stated as follows:

The Court erred in failing to find and decree that the deed of R. J. Bolles to Trustees of Internal Improvement Fund, dated November 28, 1914, although in form a deed

26—Vol. 90.

absolute, was, in fact, a mortgage to secure an existing indebtedness.

As we view the case, the one question to be determined under assignment one, with all its subdivisions, is whether or not the conveyance executed by R. J. Bolles to the Trustees of the Internal Improvement Fund, on November 28, 1914, together with the agreement of same date, upon. the part of the Trustees, to re-convey the property, was, in fact, a mortgage, or a deed absolute, with an option upon the part of the grantor to repurchase, at a certain price, within a fixed time.

. Section 3836, Revised General Statutes of Florida, is as follows: ''All deeds of conveyance, obligations, conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held as mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages.''

This Court has repeatedly held, under this statute, that a deed absolute on its face, will be held to be a mortgage, when it is proved that it was made to secure the payment of money. Shear v. Robinson, 18 Fla. 379; Franklin v. Ayer, 22 Fla. 654; First National Bank v. Ashmead, 23 Fla. 379, 2 South. Rep. 657; 665 DeBartlett v. DeWilson, 52 Fla. 497, 42 South. Rep. 189; Hull v. Burr, 58 Fla. 432, 50 South. Rep. 754; Elliott v. Connor, 63 Fla. 408, 58 South. Rep. 241.

. The question, whether a deed which is absolute in form is to be taken as a mortgage, depends upon the intention of the parties in regard to it at the time of its execution.

This may be ascertained from the paper itself, or the instrument in connection with contemporaneous writings or agreements concerning the subject-matter, or by the aid of extraneous evidence which will determine the decision of the question. 27 Cyc. 1007. The attitude of the parties relative to the conveyance after its execution may also be considered.

In order to convert a deed, absolute in its terms, into a mortgage, it is necessary that the understanding and intention of both parties to that effect should be concurrent and the same. We shall, therefore, undertake to find what was the intention of R. J. Bolles and the Trustees of the Internal Improvement Fund when this deed was executed and delivered.

It is admitted that Richard J. Bolles became indebted to the Trustees of the Internal Improvement Fund on December 23, 1908, when he purchased and secured a deed to about 500,000 acres of land in the Everglades, he at that time executing a mortgage on the same land to secure his indebtedness therefor, evidenced by his promissory notes aggregating the sum of $950,000. It is also admitted that subsequent to December 23, 1908, and several years prior to November 28, 1914, R. J. Bolles, for valuable consideration, agreed to anticipate the payment of all his unpaid notes, agreeing to pay them all within two years from April 10, 1910, except the note for $100,000, due January 1, 1916.

It is further admitted that all the notes were not paid in accordance with his last agreement, and that on November 28, 1914, there was still unpaid the two notes for $100,000 each, one being past due, the other falling due January 1, 1916, and that there was a large amount then past due for state, county and drainage taxes on the property, described in the Bolles mortgage to the Trustees,

and that drainage tax sale certificates were outstanding against the land, and that on December 1, 1914, these lands would, under the law, vest in the Board of Commissioners of Everglades Drainage District. Such was the situation on November 28, 1914, when the agreement, quoted in the above statement, was entered into, and the deed now in question was executed and delivered by Richard J. Bolles and received by the Trustees.

Let us see if we can ascertain the intention of the parties to the deed from the minutes of the Trustees of the Internal Improvement Fund and from the agreement of November 28, 1914, between Bolles and the Trustees; that is, whether or not they intended that it should be a mortgage to secure the payment of money, or a deed absolute, with the option of repurchase by Bolles.

. The minutes of the meeting of the Board of Trustees of the Internal Improvement Fund, held on November 28, 1914, among other things, contain this entry: "There appeared before the above named Trustees on this day R. J. Bolles, J. C. Cooper, attorney for Mr. Bolles, and W. H. Ellis, attorney for the Trustees. There was under consideration the matter of the indebtedness of R. J. Bolles to the Trustees, represented by his two notes for $100,000 each, both of which are secured by a mortgage upon said lands particularly described in the said mortgage. It appearing that Mr. Bolles had failed to pay the State and County taxes due on said lands and the drainage taxes for the year 1913, and the mortgaged lands had been sold for the drainage taxes of 1913, and the certificates issued to the Board of Commissioners of Everglades Drainage District, and the time for the redemption of said certificates, under the provisions of the Acts of 1913, Chapter 6486, will expire on the 1st day of December next, and the title to said lands become vested in said Board under

the provisions of said Act. Therefore, in order to protect the security held by the Trustees for the payment of the said notes, and in order to prevent litigation, and save the expense of the foreclosure of the mortgage and delays incident thereto, it was, Resolved, to take from the said Bolles, a conveyance of the lands described in said mortgage aggregating 250,180 acres, and assume the payment of the said taxes, State, County and Drainage, and settle and cancel the indebtedness of said Bolles, as represented by said notes and the mortgage securing said notes.

"It was further resolved by the Trustees that if the said Bolles should pay to the said Trustees on or before June 1, 1915, Two Hundred Thousand Dollars, and all taxes due on said lands, that said lands would be conveyed to said Bolles by the Trustees, and that in the meantime the Trustees would convey to Bolles any of said lands, in not less than section tracts, upon payment by him in cash of $3.00 per acre."

Let us now refer again to the agreement quoted in the statement of this case. We find therein that it was the desire of the parties "to effect an *adjustment* and *settlement*" of the indebtedness of Bolles to the Trustees, and "in consideration of the premises and agreements and covenants to be performed by the parties hereto, the said Richard J. Bolles hereby agrees to *reconvey* to the Trustees of the Internal Improvement Fund of the State of Florida the portion or remainder of the said land originally conveyed by the Trustees of the Internal Improvement Fund to the said Richard J. Bolles, and included in the said mortgage from the said Bolles to the said Trustees, and not heretofore released by the Trustees from the said mortgage."

It is then agreed "That the said Trustees of the Internal Improvement Fund, in consideration of the agreements

and covenants to be performed by the parties hereto, and the said reconveyance to them by the said Richard J. Bolles of the said lands hereinbefore described, agree to cancel and return to said Richard J. Bolles the said two notes and the said mortgage hereinbefore described, and to assume the unpaid State, County and Drainage taxes upon the lands.''

There then follows the agreement upon the part of the Trustees to convey this property to Richard J. Bolles, ''if he pays'' $200,000 and the taxes before June 1, 1915, time being of the essence of the agreement. The minutes of the Board give an account of what transpired leading up to the agreement and deed of November 28, 1914. The agreement, which was worded by the capable attorneys of both Mr. Bolles and the Trustees of the Internal Improvement Fund, shows that it was the intention of the parties to make an *adjustment* and *settlement* of the indebtedness, and that the indebtedness should be *settled* and *cancelled* by the execution of this deed by Bolles, and that the Board of Trustees were to pay the taxes and redeem the tax sale certificates. This seems to be plainly stated as the intention of the parties.

It further appears from the evidence that the notes were cancelled, and also the mortgage, and they were surrendered to Richard J. Bolles, or his attorney, and the cancellation of the mortgage recorded. Letters written by the attorneys of Mr. Bolles to the Trustees and their attorney, subsequent to the agreement of November 28, 1914, and prior to the actual cancellation and surrender of the notes and mortgage, are calling upon the Trustees for the cancellation and surrender of the notes and mortgage, upon the ground that the same had been settled by the deed.

It is clear that when Mr. Bolles and his attorney came before the Trustees on November 28, 1914, and the agreement was reached, it was the intention of all concerned to

cancel and settle the indebtedness by the execution of the deed by Mr. Bolles to the Trustees.

Mr. Bolles, who lived over two years after making this conveyance, did not, as far as the record shows, say or do anything to indicate that his intention was other than to make an absolute deed to the property. It is true that the agreement also provided that if, on or before June 1, 1915, Bolles paid the sum of $200,000 and reimbursed the Trustees of the Internal Improvement Fund for the taxes paid by them under the agreement, then the Trustees would reconvey the property to him. Did this agreement make the deed executed by Bolles a mortgage? Was this a defeasance, or was it merely giving Bolles the privilege of purchasing the property at the original price, within a certain time, if he elected to do so?

In order for this agreement to reconvey to operate as a defeasance, there must be a debt or obligation secured by the conveyance. In the case of Chaires v. Brady, 10 Fla. 133, we said: "It is an assential ingredient to constitute a mortgage, that both the right to foreclose and the right to redeem should exist; they are co-relative and inseparable." Again, in the same case, we said: "Mere inadequacy of price or other inequality in the bargain will not *per se* constitute a ground in equity to avoid the contract; there must be some other ingredient in the case of a suspicious character, such as the peculiar relation of the parties, imbecility, etc., from which the presumption of fraud would naturally arise."

·We held also in the case of Franklin v. Ayer, *supra*, that "The existence or non-existence of a debt is a distinguishing test as to whether a transaction is a conditional sale or a mortgage."

Again we said in the case of Smith v. Hope, 47 Fla. 295, 35 South. Rep. 865, "A feature essential to a mortgage is an indebtedness which it is designed to secure. The exist-

ence of this is not implied in a provision that a bill of sale shall be void if the grantors shall 'pay' a certain sum of money by a certain day. Payment of money does not necessarily imply a previous binding obligation to pay, but may be made as a recompense or equivalent for some present benefit, *the procurement of which is optional with the payer.*" (Italics supplied.)

"No conveyance can be a mortgage unless made for the purpose of securing a debt or the performance of a duty, either existing at the time of the execution or to be created or to arise in the future. 27 Cyc. 1008. And a deed absolute in form cannot be held a mortgage without proof of an obligation to be secured by it, either in the form of an antecedent debt between the parties, or a loan, debt, or assumption of liability. Knaus v. Dreher, 84 Ala. 319, 4 South. Rep. 287; 27 Cyc. 1008.

"A definitive test to determine whether an absolute deed, executed in consideration of a precedent debt, with an attendant agreement to reconvey the premises to the grantor on payment of the consideraiton, constitutes a mortgage or a conditional sale is found in the question, whether the debt was discharged by the deed or subsisted afterward. On the one hand, if the conveyance satisfied and extinguished the obligation, so that no debt remained due from the grantor to the grantee, it cannot be held a mortgage, since there cannot be a mortgage without something to be secured by it. And in that case the grantor's privilege of refunding the consideration, and so entitling himself to a reconveyance, is not to be regarded as an equity of redemption, but is a badge of conditional sale." 27 Cyc. 1010; Holmes v. Warren, 145 Cal. 457, 78 Pac. Rep. 954; Carroll v. Tomlinson, 192 Ill. 398, 61 N. E. Rep. 484; Doying v. Chesebrough (N. J. Ch.) 36 Atl. 893; Blazy v. McLean, 129 N. Y. 44, 29 N. E. Rep. 6.

"A deed absolute on its face will not be construed as a

Holmberg et al.  v. Hardee et al. Trustees—Opinion of Court.

mortgage where, after its execution, there remains no indebtedness from the grantor to the grantee." Doying v. Chesebrough, *supra.*

"If it is a debt which the grantor is bound to pay, which the grantee might collect by proper proceedings, and for which the deed of the land is to stand as security, the transaction is a mortgage, but if it is entirely optional with the grantor to pay the money and receive a reconveyance or not to do so, he has not the right of a mortgagor, but only a privilege of repurchasing the property. And if it appears that the deed was accepted in payment and satisfaction of an existing debt, the agreement for a reconveyance on payment of a given sum, cannot convert it into a mortgage." 27 Cyc. 1003; Reed v. Bonc, 96 Mich. 134, 55 N. W. Rep. 619; Gassett v. Bogk, 7 Mont. 585, 19 Pac. Rep. 281, 1 L. R. A. 240; Wood v. Jansen, 130 Cal. 200, 62 Pac. Rep. 673.

It is said in 19 R. C. L., Sec. 35, Mortgages, "There is a test generally accepted as decisive, and this is the mutuality and reciprocity of the remedies of the parties—that is to say, if the grantee enjoys a right, reciprocal to that of the grantor to demand reconveyance, personally to compel the latter to pay the consideration named in the stipulation for reconveyance, the transaction is a mortgage; while if he has no such right to compel payment, the transaction is a conditional sale. This test is a derivation of the consideration that personal liability of the grantor is regarded either as the *sine qua non* of a mortgage, or as a factor whose existence or non-existence points strongly to the fact that a conveyance is or is not a mortgage. Accordingly, in those jurisdictions wherein personal liability is an essential element of a mortgage, want of mutuality is, of course, conclusive that the transaction is a conditional sale. Where a contrary rule prevails, want of mutuality is strongly indicative of a sale, but is not conclusive."

In Haynie v. Roberson, 58 Ala. 39, the Supreme Court of

Alabama says, in the text, that "there must be a debt, or there can be no security for its payment. Hence, it is said that if there is no debt, there can be no mortgage. Debt means, in this connection, a duty or obligation to pay, for the enforcement of which an action will lie."

"Though a conveyance of land contained a clause that the grantor was to reconvey the land to the grantee upon receiving a certain sum within a specified time, such fact will not affect the construction of the instrument as a deed with an option to repurchase, it appearing that repurchase was optional with the grantor, and that the conveyance was made and accepted in payment of an existing debt. Bond v. Reed, *supra*.

Was there, after the cancellation and surrender of the notes and mortgage to Bolles, any existing indebtedness or binding obligation upon him to pay the Trustees anything? The Trustees had surrendered as paid all evidence of any indebtedness. Under the facts alleged and proved, they could not have foreclosed the instrument. Bolles owed them nothing except the $13,000 note and mortgage made to secure the payment of money advanced to pay the drainage tax upon other property in which Bolles was interested.

Where a mortgagor, for the purpose of settling and cancelling the mortgage indebtedness, executes and delivers to the mortgagee a deed conveying the fee simple title to the mortgaged property, and the mortgagee, in consideration thereof acknowledges payment of the indebtedness, and cancels and surrenders the promissory notes, evidencing such indebtedness, together with the mortgage securing their payment, the fact that in the same instrument, or in another instrument contemporaneous therewith, the vendee agreed that upon the payment of a stipulated sum, within a specified time, to reconvey the property to the vendor, does not render such deed a mort-

gage, there being, under such circumstances, no debt or obligation for the payment of money secured by the deed.

Such a transaction constitutes a deed absolute, with an option upon the part of the vendor to repurchase, for the consideration named and within the time named, or a conditional sale.

In this case it was clearly the intention of both Richard J. Bolles and the Trustees of the Internal Improvement Fund to "settle" and "cancel" the indebtedness and the mortgage securing it, by the conveyance of the property from Bolles to the Trustees, giving to Bolles the option to repurchase the property by June 1, 1915, at the figure named, if he desired to do so. There was evidently no intention to create a new obligation, nor to keep alive the old obligation of Bolles. Therefore, the court below did not err in its decree, which necessarily adjudged the instrument to be an absolute deed, rather than a mortgage.

The second assignment of error raises the question of the admissibility of the testimony of various witnesses and sundry documents which appear to have been before the court. The record shows that objections were made to the admissibility of the testimony before the master, and that motions to strike the answers of witnesses to the questions propounded were duly made.

This court has repeatedly held that, before the appellate court will consider objections to testimony taken before a master in chancery case, the transcript of the record must show that the objections and motions concerning the admissibility of testimony were brought to the attention of the court, and it should also show the rulings of the court on the objections and motions concerning the objections to the evidence and the motions to strike. The transcript of the record in this case utterly fails to show that the court below ruled upon the objections or the motions to strike.

We have held in Patrick v. Kirkland, 53 Fla. 768, 43

South. Rep. 969, that "where testimony made incompetent by statute appears in the record and there is also sufficient competent testimony, including that of the defendant, to sustain the decree against the defendant, he may not be harmed by the appearance of such incompetent testimony in this record." In that case we also held that "testimony made incompetent by statute should be disregarded by the trial court and by the appellate court."

In the absence of positive showing in the transcript of record that the court below considered the testimony objected to, and claimed to be incompetent under statute, we will not presume that the court below did consider the same. But, even if the testimony was not excluded by the trial court, there was competent evidence in the record sufficient to sustain the decree. "Where the competent evidence in the record is sufficient to sustain the decree, it will not be disturbed on appeal because incompetent evidence appears in the record." Patrick v. Kirkland, *supra*.

If there were errors committed in admitting the testimony objected to, if the testimony was admitted by the court below, they would be harmless errors, as the final decree of the court could not have been other than it was, under the evidence properly before the court. See Patrick v. Kirkland, *supra;* Tampa & Jacksonville Ry. Co. v. Crawford, 67 Fla. 77, 64, South. Rep. 437.

The decree of the court below is affirmed.

Affirmed.

BROWN, C. J., WHITFIELD AND STRUM, J. J., AND KOONCE AND PARKS, Circuit Judges, concur.

ELLIS, TERRELL AND BUFORD, J. J., disqualified.

## On Rehearing.

1. Competent parties may establish and terminate mortgage or other contract relations as they desire to do, when no rule or law or of public policy is thereby violated; and neither the law nor public policy forbids competent parties to settle and discharge a pre-existing mortgage indebtedness and to determin the mortgage relation by a conveyance to the mortgagee of the mortgaged property or a part of it in adjustment and settlement of the debt.

2. The maxim "once a mortgage always a mortgage" has no application where competent parties have adjusted and settled the mortgage debt and have definitely terminated the mortgage relation.

3. Under the statutes of this State a mortgage is a mere lien and any instrument of writing conveying or selling property for the purpose or with the intention of securing the payment of money, is a mortgage.

4. Where there is a purpose or an intent to secure the payment of money, any instrument conveying or selling property is in law a mortgage without reference to the terms of the instrument, and the purpose and intent to secure the payment of money may be shown by appropriate evidence.

5. Where an instrument conveying or selling property is executed with intent not to secure the payment of money but to adjust and settle a mortgage debt, which debt is cancelled, the instrument is not as matter of law a mortgage, but the terms of the instrument determine its character and effect.

6. In this case the instrument executed in "adjustment and settlement" of the mortgage debt was not "itself a mortgage," either by its terms and purpose or by operation of law, because the mortgage debt was thereby adjusted, settled and cancelled.

Rehearing denied.

Holmberg et al. v. Hardee et al. Trustees—Decision of Court.

*W. H. Baker, S. Bryan Jennings* and *George C. Bedell,* for Appellants;

*J. B. Johnson,* for Appellees.

PER CURIAM.—Competent parties may establish and terminate mortgage or other contract relations as they desire to do, when no rule of law or of public policy is thereby violated; and neither the law nor public policy forbids competent parties to settle and discharge a preexisting mortgage indebtedness and to terminate the mortgage relation by a conveyance to the mortgagee of the mortgaged property or a part of it in adjustment and settlement of the debt. The maxim "once a mortgage always a mortgage" has no application where competent parties have adjusted and settled the mortgage debt and have definitely terminated the mortgage relation.

Under the statutes of this State a mortgage is a mere lien and any instrument of writing conveying or selling property for the purpose or with the intention of securing the payment of money, is a mortgage.

Where there is a purpose or an intent to secure the payment of money, any instrument conveying or selling property is in law a mortgage without reference to the terms of the instrument and the purpose and intent to secure the payment of money may be shown by appropriate evidence. Connor v. Connor, 59 Fla. 467, 52 South. Rep. 727. But where an instrument conveying or selling property is executed with intent not to secure the payment of money but to adjust and settle a mortgage debt, which debt is cancelled, the instrument is not as matter of law a mortgage, but the terms of the instrument determine its character and effect. Pilkington v. Rose, 88 Fla. 547, 102 South. Rep. 751.

In this case the instrument executed in "adjustment

and settlement" of the mortgage debt was not "itself a mortgage," either by its terms and purpose or by operation of law, because the mortgage debt was thereby adjusted, settled and cancelled. See Pilkington v. Rose, *supra;* Bell v. Shiver, 181 Ala. 303, 61 South. Rep. 881; Ex Parte Southern Ry. Co. 181 Ala. 486, 61 South. Rep. 881; 1 Jones on Mortg. (7th ed.) Sec. 267; Wallace v. Johnstone, 129 U. S. 58, 9 Sup. Ct. Rep. 243; 19 R. C. L. p. 266; Johnson v. National Bank of Commerce of Tacoma, 65 Wash. 261, 118 Pac. Rep. 21, L. R. A. 1916 B 4.

Rehearing denied.

BROWN, C. J. AND WHITFIELD AND STRUM, J. J. AND CAMPBELL, KOONCE AND PARKS, *Circuit Judges,* concur.

ELLIS, TERRELL AND BUFORD, J. J., disqualified.