JOHNSON, Judge.
This is an appeal from a final decree foreclosing a mortgage and directing sale of the mortgaged premises in event the decree not satisfied.
The facts, as they appear from the documentary evidence only, are: The First National Bank of Gainesville, on July 24, 1963, made a commitment, apparently verbal, to Donald M. Schenck to loan him $15,000.00 to be secured by a note and mortgage upon certain lands. The document filed in evidence substantiating this agreement is a letter from the Bank to its attorney, Mr. Graham, dated July 24, 1963, advising said attorney of the agreement to make the loan to “Donald M. Schenck and Bertie B. Schenck, his wife,” in the maximum amount of $15,000.00, with an open end note for such maximum loan to be made at any time up to five years from date. Other information, along with certain abstracts of title were delivered to said attorney along with said letter. On January 13, 1964, the Bank loaned D. M. Schenck $15,000.00 upon his promissory note of said date and amount, with a maturity date of 91 days thereafter, which note was endorsed by the three plaintiffs below, appellees herein. We find next that Donald M. Schenck and Bertie B. Schenck, his wife (italics supplied) executed a note and secured the same by a mortgage upon certain real estate, dated January 27, 1964, in the principal amount of $15,000.00 and payable on or before one year after date payable to The First National Bank of Gainesville, hereinafter referred to as Bank. The note specified “This note is secured by a future advance mortgage recorded * * The mortgage provided, inter alia, that the “mortgagors” Donald M. Schenck and Bertie B. Schenck, his wife “are justly and legally indebted to The First National Bank of Gainesville * * * hereinafter called ‘mortgagee’, in various sums not to exceed the sum of $15,000.00, which sums shall be covenanted to be paid by a promissory note or notes * * * provided for interest from the date such sums are so advanced * * * all such sums so advanced by said mortgagee to the mortgagors shall mature and be payable on or before 5 years from the date hereof * This mortgage was duly filed for re *357 cording in the office of the clerk of the circuit court on March 13, 1964 and recorded in O. R. Book 268, page 531. In March of 1965, certain of the mortgaged lands were released therefrom by the mortgagee. Donald M. Schenck (D. M. Schenck) died May 1, 1964. The Bank filed a claim against the estate of Mr. Schenck on July 16, 1964, in the amount of $15,000.00 attaching a copy of the note of January 13, 1964, which had been endorsed by the appellees herein. On July 28, 1964, the appellees herein, filed a claim against the estate of Donald M. Schenck for $15,-000.00 based on the same note of January 13, 1964, alleging that the estate of the deceased “is contingently liable them as accommodation endorsers on that certain promissory note dated January 13, 1964, payable to The First National Bank of Gainesville in the principal sum of Fifteen thousand Dollars * *
On March 12, 1964, Donald M. Schenck and Bertie B. Schenck executed to the Bank, to the attention of Mr. C. B. Outen (who appears to be President of the Bank) authorization “to deposit the proceeds of the above loan to the account of Donald M. Schenck or Bertie B. Schenck.” (There is no further documentary evidence as to completion of the loan referred to in the communication of March 12, 1964, no deposit slip or other evidence of distribution of the loan.)
On June 18, 1965, the appellees gave to the Bank a letter, signed by all three ap-pellees, setting forth the fact of the January 13, 1964, note endorsed by them, the fact of Mr. Schenck’s death on May 1, 1964, and admitting their liability on said note, if not paid by the estate of the deceased Schenck, and requesting that the Bank assign said Schenck note (of January 13) to appellees, along with the Bank’s claim against the estate. The said communication or instrument further asserted that in consideration of assigning said note to them, the appellees were attaching their note for $15,000.00 dated April 13, 1965, payable one year after date, along with checks totaling $900.00 for interest from April 13, 1964 to April 1965, on the Schenck note being assigned. This assignment appears on the back of the note of January 13, 1964. While the above instrument was dated June 18, 1965, we find that the Bank had already on May 4, 1965 assigned to appellees, without recourse and with express indemnity against any claims by reason of said assignment for any reason, which was filed for record on May 6, 1965, the mortgage and note dated January 27, 1964, executed by Mr. and Mrs. Schenck.
The verbal evidence, based upon testimony of the President of the Bank, the Bank’s attorney, the attorney for Mr. Schenck, who is also one of the appellees, and the appellee Taylor, together with Mrs. Schenck’s testimony, reveals a set of conclusions of intentions which are not in accord with the documentary evidence on all material points. For instance, the witnesses for the appellees, except the Bank’s attorney, Mr. Graham, generally testify, inter alia, to the effect that the note and mortgage of January 27, 1964, were given to be substituted for the note of January 13, 1964, which had been endorsed by the appellees, or that the proceeds of the January 27 loan were to be used to pay off the January 13 note. The documentary evidence refutes this, because the application for a loan, not to exceed $15,000.00, to be evidenced by an open end note and secured by a real estate mortgage, had been approved by the Bank in July 1963, subject to approval of title by the Bank’s attorney, Mr. Graham, and the giving of the note and mortgage. The note of January 27 and the mortgage purporting to secure the same, were a part of and culmination of the application made in July 1963, at a time some six months before the emergency was even anticipated with the Hawthorne Bank which necessitated the loan from the Gainesville Bank, and therefore, it could not have been in anticipation thereof. It may well be that in the minds of the appellees and the President of the Gainesville Bank and Mr. *358 Schenck, it -was the thought -and intention that when the mortgage loan to Mr. and Mrs. Schenck was closed and the funds derived therefrom available, that the emergency loan, endorsed by the appellees, would be paid off, but, none of the parties elected to discuss this phase of the matter in detail with the appellant here, Mrs. Schenck at or before the time the January 13 note and loan were made. The parties knew of the estranged relations between Mr. and Mrs. Schenck and that they had been living apart from each other for quite awhile. In fact, one of the appellees, who represented Mr. Schenck as attorney, testified that he was, at least, skeptical of whether Mrs. Schenck would sign the mortgage, which we now identify as being dated January 27. The testimony of ap-pellee Johnson is to the effect that he told Mrs. Schenck, when getting the note and mortgage of January 27 signed, that “all of the money from the proceeds of the loan was to be used for the purpose of repaying the then existing * * * indebtedness * * He says he did not tell her she would get any money from the loan, but neither did he tell her categorically, that she would not. We further find that the appellant refused to sign a modification mortgage, prior to the death of Mr. Schenck, as well as subsequent thereto. She said she was to get part of the money, after paying the Hawthorne Bank $500.00 or $5,000.00 and the light bill and a few other bills. The conduct of the Bank and the appellees indicate that there was some doubt as to the validity of the mortgage and note of January 27, 1964, because both the Bank and the appellees filed claims against the estate of Mr. Schenck based upon the January 13th note of $15,000.00. These claims were filed after the January 27th mortgage had been recorded. We think, however, that the key point upon which the factual situation turns in this case is expressed in the testimony of Mr. Graham, attorney for the Bank of Gainesville and who, at all times prior to assignment to the appellees, had the subject mortgage and note in his possession. He says the loan was never closed and no money ever disbursed thereon. When asked on cross examination, with reference to the January 27 note and mortgage,
“Q. Why didn’t you finally close the loan ?
“A. I guess the best answer I can give you is because Mr. Outen told me not to.”
Mr. Outen was President of the Gaines-ville Bank and was the officer initially instructing Mr. Graham with regard to such loan back in July 1963. It therefore appears that the Bank did not by its action, consider the latter note and the mortgage as a valid or binding obligation and refused to lend money thereon. This is further borne out by the strict language contained in the assignment of said note and mortgage to the appellees by the Bank, wherein it went beyond the ordinary words of an assignment in protecting itself from any repercussions or damages it might sustain by reason of assigning such mortgage and note, indicating, at least, that the Bank had some doubts about the transaction. The Bank, apparently was not satisfied to rely upon the mortgage as security for a repayment of the $15,000.00 loan made January 13 to Mr. Schenck, yet it accepted a new note for the same amount executed only by the appellees and without collateral or mortgage, although the Bank president had testified that he would not have let Mr. Schenck have the money on January 13 even with the appellees endorsement, had it not been for his anticipation of getting the real estate mortgage later. This doesn’t jell with common sense.
The appellant was not a party to the January 13 transaction. She never received any money on the note of January 27, and in fact, no money was ever advanced on said note. The authorization for disbursement stated that the proceeds were to be deposited “to the account of Donald M. Schenck or Bertie B. Schenck.” There is no pretense even that this was done. The loan was not closed and therefore, we cannot see how the appellant and *359 her property can be held liable for a nonexistent debt as we find to be true insofar as the January 27 note and mortgage were concerned.
We conclude from the evidence that the mortgage in question did not constitute a valid lien on appellant’s property, because no money was ever disbursed on the note secured by said mortgage, and in fact was never fully accepted by the Bank, and therefore no debt arose therefrom* which could be the proper subject of the lien claimed in the mortgage in question.[1] We cannot reach the conclusion that the mortgage sued upon was given to secure the prior existing indebtedness of Mr. Schenck, the appellant’s deceased husband, to the First National Bank of Gainesville, nor that the notes of January 13 and January 27, were evidence of the same indebtedness. No matter what the President of the Gaines-ville Bank may have had in mind when he approved the application for a loan by Mr. Schenck in July 1963, nor what he had in mind when he made the loan January 13, 1964, it is evident he did not rely upon the anticipated mortgage, but upon the endorsement of three financially responsible men as the Bank’s security for repayment of the loan. The second note of January 27, was an entirely different transaction based upon an application for loan made in July 1963, which could not have been anticipated in July 1963, to cover an emergency loan on January 13, 1964. The President of the Bank does not deny that he advised the Bank’s attorney, Mr. Graham, not to complete the loan on the January 27 note and mortgage.
Having concluded from the evidence that the mortgage being foreclosed and the note secured thereby, do not constitute a valid lien on the property described in the mortgage nor constitute an obligation of the appellant, we see no reason to discuss further the merits or demerits of the question of a wife binding her separate property for her husband’s debts.
For the reasons stated, the final decree appealed is reversed and the Chancellor directed to enter proper decree in accordance with the findings herein.
Reversed.
WIGGINTON, Acting C. J., and CARROLL, DONALD K., J., concur.

. Newman v. Greene, 92 Fla. 684, 109 So. 582 (1926).