239 So.2d 97 (1970)
BANK OF MIAMI BEACH, a Corporation, Petitioner,
v.
The FIDELITY AND CASUALTY COMPANY OF NEW YORK, a Corporation, Security Mutual Casualty Company, a Corporation, and Lawyers' Title Guaranty Fund, a Business Trust, Respondents.
No. 37894.
Supreme Court of Florida.
July 22, 1970.
Rehearing Denied September 29, 1970.
Stephen H. Cypen, of Irving Cypen Law Offices, Miami Beach, for petitioner.
John H. Wahl, Jr., of Walton, Lantaff, Schroeder, Carson & Wahl, Miami, for respondents.
*98 ROBERTS, Justice.
We here review on petition for certiorari a decision of the Third District Court of Appeals in Bank of Miami Beach v. Lawyers' Title Guaranty Fund, Fla.App. 1968, 214 So.2d 95. We took jurisdiction and issued the writ on account of direct conflicts and inconsistencies referred to hereafter.
The facts are stated in detail in the decision here reviewed. For the purpose of this review, they may be summarized as follows: The respondent, Lawyers' Title Guaranty Fund, issued to the petitioner, Bank of Miami Beach, as mortgagee, a so-called title insurance contract covering a mortgage executed by a Mr. and Mrs. Weissel, as mortgagors. In a suit to foreclose the mortgage brought by the Bank against the Weissels, the Chancellor found that the mortgage had been legally and properly executed by the Weissels but that their signatures on the note which it was given to secure had been forged by their son. He concluded as a matter of law that the voiding of the note invalidated the mortgage, and entered a final decree dismissing the Bank's complaint. The Bank did not appeal his ruling, and the case was subsequently settled when the Weissels paid the Bank a substantial portion of the debt represented by the forged note and secured by the mortgage. The point of law that was controlling in the mortgage foreclosure suit has relevance here, as will be discussed hereafter.
Following its unsuccessful prosecution of the mortgage foreclosure suit, the Bank filed the instant suit to recover from three insurance carriers its loss in the mortgage transaction. Named as one of the defendants was the respondent here, the Lawyers' Title Guaranty Fund ("the insuror" hereafter). The title insurance contract issued by this insuror provided that the insuror "guarantees" that the mortgage covered by the policy "has been executed in accordance with law" and "further guarantees" that said mortgage "constitutes a valid mortgage lien on the property described in said mortgage". Immediately following these "guarantees", the policy provided as follows:
"* * * and LAWYERS' TITLE GUARANTY FUND will pay to the Mortgagee all loss or damage, in an amount not to exceed the amount of indebtedness, as stated above, that Mortgagee may sustain because of encumbrances, liens, or other objections in the title to the property of the Mortgagor named in Schedule A hereof that have not been excepted in Schedule B hereof."
The respondent filed a motion for summary judgment on the ground, among others, that the alleged loss was not within the coverage of its title insurance contract. The motion was granted and the suit dismissed as to this defendant. On appeal, the District Court of Appeal affirmed. The sole question decided was stated in its opinion as follows: "Does an invalid mortgage note render a mortgage lien invalid so as to subject the insuror on a title insurance contract which guaranteed the validity of the mortgage lien to liability for breach of contract?" Its answer: No. It is this decision that we here review.
In support of its holding, the appellate court quoted statements from decisions to the effect that a title insurance contract insures only the title to the land securing the debt and not the debt itself. And in support of the decision the respondent argues here that the covenant to pay, quoted in full above, was controlling and superseded the provisions  termed by the respondent "recitals"  as to the validity of the execution of the mortgage and the mortgage lien. As stated in respondent's brief, its argument is that
"The policy sub judice expressly limited its coverage to title defects. This was the operative-clause  the covenant of the contract. There was no such defect in the mortgagor's title and therefore no coverage."
*99 The cases relied upon by respondent in support of its argument were concerned with policies containing general recitals as to coverage but expressly limiting coverage to certain conditions or expressly excluding coverage under certain conditions. See Ringenberger v. General Accident F & L Assur. Corp., Fla.App. 1968, 214 So.2d 376; Voelker v. Combined Ins. Co. of America, Fla. 1954, 73 So.2d 403; and Haenal v. U.S. Fidelity & Guaranty Co., Fla. 1956, 88 So.2d 888. In the policy sub judice the coverage in question was not contained in a general "recital" but in a specific and express "guarantee" that the mortgage constituted a valid mortgage lien. So the decisions relied upon by respondent are not authoritative here.
No cases need be cited in support of the well-settled rule that an uncertainty or ambiguity in a contract of insurance will be resolved in favor of the insured. The respondent's argument runs head-on into this rule; and insofar as the appellate court's decision may be interpreted as holding that the two "guarantees" in the policy referred to above  that the mortgage was validly executed and constituted a valid mortgage lien on the property  were mere verbiage and of no force and effect, it is in direct conflict with this rule.
We cannot believe, however, that the Third District Court of Appeal intended to hold for naught the "defect in execution" guaranty, since in Ferrell v. Inter-County Title Guaranty & Mtg. Co., Fla.App. 1968, 213 So.2d 518, it held that a defect in the mortgage on account of a forged signature thereon was covered by a clause in the policy insuring against "any defect in the execution of said mortgage." Nor do we think the appellate court intended to told that a "valid mortgage lien" clause such as that in the policy in question would be given effect only as to defects in title. Despite language in the quotations from other decisions that might be interpreted to the contrary, the actual holding of the appellate court in the decision here reviewed was that a defect in the note evidencing the indebtedness was not a defect in the mortgage securing such indebtedness and therefore the loss attributable to the defect in the note was not within the coverage of the "valid mortgage lien" clause of the policy.
We agree with the appellate court's conclusion, for the simple reason stated by it  that is, that a mortgage lien and a mortgage debt are two entirely different legal concepts or "species." A provision guaranteeing that the mortgage constituted a "valid mortgage lien" might be held to cover a loss resulting from fraud, mistake, duress, or misrepresentation in the procurement of the mortgage  a point that is not presented nor decided here; but such a guarantee of the validity of the mortgage lien cannot and should not be construed as guaranteeing that the insuror has made a careful investigation of the origin of the mortgage debt and guarantees its payment or validity. If such coverage is contemplated, the policy should specifically so provide.
We come now to the point that was controlling in the mortgage foreclosure suit and that is relevant and should not be overlooked here. The fact is that the court and the parties have erroneously assumed that, when the note evidencing the indebtedness failed, the perfectly valid mortgage was also invalidated. This assumption is predicated on a statement in Nelson v. Stockton Mortgage Co., 1930, 100 Fla. 1191, 130 So. 764, as follows:
"It is well settled in this and other jurisdictions that there can be no mortgage unless there is a debt to be secured thereby or some obligation to pay money."
Cited in support of this statement were Holmberg v. Hardee, 1926, 90 Fla. 787, 108 So. 211, and Guaranty Title & Trust Co. v. Thompson, 1927, 93 Fla. 983, 113 So. 117. In Holmberg this court pointed out that a deed absolute in form cannot *100 be held to be a mortgage without proof of an obligation to be secured by it, "either in the form of an antecedent debt between the parties, or a loan, debt, or assumption of liability." (Emphasis added.) And in the Guaranty Title & Trust Co. case it was said that a mortgage is "merely a security for the performance of an obligation, usually the payment of a debt, and is incidental thereto."
The first Nelson case, 130 So. 764, was decided on the pleadings  the court dismissing the complaint on a plea that none of the loan money had been paid to the mortgagor prior to his death. After stating the rule quoted above, the court said that the plea was good as to the widow of the deceased mortgagor "unless it be that she is estopped from denying the validity of the lien by reason of having accepted the fruits and benefits of the proceeds of the mortgage." Incidentally, it might be noted that the mortgage lien was eventually upheld in a new trial on amended pleadings. See Nelson v. Stockton Mtg. Co., 1937, 129 Fla. 69, 175 So. 770.
It is clear, then, that the rule of the Nelson case, supra, 130 So. 764, is applicable only when there is no obligation whatsoever by way of a debt, loan, assumption of liability, or under equitable principles of estoppel, for which the mortgage lien should stand as security. See, for example, Schenck v. Taylor, Fla.App. 1966, 188 So.2d 356. In the instant case, the fact that the Weissels could not be held liable on the promissory note because their signatures thereon had been forged by their son does not mean that the debt was extinguished and the Bank was left without a remedy. The son was still liable to the Bank under well settled principles of law for the sums disbursed by the Bank to him or at his direction under the aegis of the forged note and other forged documents directing distribution of the proceeds of the loan. And when the Weissels legally and properly executed the mortgage, they were charged with knowledge of its contents, among which as a recital that it secured an obligation purportedly signed by them. In these circumstances, it would be grossly inequitable not to uphold the lien represented by the valid mortgage  either on the theory that the Weissels assumed their son's liability when they executed the mortgage reciting the note (which would be a valid consideration for the mortgage) see Holmberg v. Hardee, supra, 108 So. 211, or under the equitable principles of estoppel referred to in the Nelson case, supra, 130 So. 764 and 175 So. 770.
Since it appears from the record that the mortgage was validly executed and that the invalid note did not extinguish the debt nor invalidate the mortgage lien, the appellate court's decision that the Bank's loss was not within the coverage of the policy in question was correct.
Accordingly, the writ heretofore issued is
Discharged.
DREW, CARLTON and ADKINS, JJ., concur.
CULVER SMITH, Circuit Judge, concurs in judgment.
ERVIN, C.J., dissents.