## MacARTHUR v. J. G. PEPPARD SEED CO.

No. 4867.   Decided March 19, 1930.   (286 P. 955.)

Soule & Spalding, of Salt Lake City, for appellant.

Tangren & Crafts, of Delta, for respondent.

CHERRY, C. J.

This is an action for damages for the alleged conversion of certain alfalfa seed by the defendant, of which the plaintiff claimed to be the special owner as mortgagee. The trial court found that the plaintiff's mortgage debt had been paid in full and gave judgment for the defendant. The plaintiff appeals.

The plaintiff had a real estate mortgage executed by Mary B. Jarvis, March 1, 1917, to secure the payment of a note for $3,000, signed by the mortgagor, on an 80-acre tract of land in Millard county. After the mortgage was executed the mortgagor was married to C. L. Skinner. On April 13, 1925, to further secure the payment of the $3,000 note referred to in the real estate mortgage, C. L. Skinner and his wife, Mary B. Jarvis Skinner, executed a chattel mortgage to the plaintiff on certain of the crops sown,

planted, grown, or harvested on the land described in the real estate mortgage during the years 1925, 1926, and 1927. In November, 1926, the plaintiff got a deed for the mortgaged land from Mrs. Skinner. After getting the deed the plaintiff brought this action against the defendant, claiming that the Skinners had, in February, 1926, delivered to it a certain quantity of alfalfa seed covered by the plaintiff's chattel mortgage which the defendant had converted to its own use, to plaintiff's damage in the sum of $450.

One of the defenses to the action was that the deed to the land was given to the plaintiff by Mrs. Skinner in full payment of the mortgage debt and that therefore the plaintiff had no ownership of the alfalfa seed in question.

The sole question here is whether the finding of the trial court that the deed was given in full satisfaction of the mortgage debt is sustained by the evidence.

The evidence upon the subject is brief. The plaintiff admitted taking the deed for the land; said that he intended that they should give him the land or he would foreclose and take a deficiency judgment against them; that when he took the deed he told Mrs. Skinner it was to save her the possibility or certainty of his getting a deficiency judgment against her or her husband, and for that reason she gave him the deed. Mrs. Skinner testified: That the plaintiff called on her and asked about the payment of the debt due him; that she told him they didn't have anything to pay with and that if it would satisfy him and help him any to get his money out of the deal she would turn over a deed to him if that would free her from the responsibility of the mortgage; that the plaintiff thereafter fixed the deed out and sent it to her and that she signed it and mailed it back to him; that she never got back any of the mortgages or papers from the plaintiff at all; that nothing was said about the chattel mortgage at that time, and that she took it as the understanding that she was through when she gave him the deed and that there was nothing else to fix up.

There is no substantial conflict in the testimony of these two witnesses. It may well be that the plaintiff intended, if he did not get the land, to foreclose his mortgage and get a deficiency judgment against Mrs. Skinner and that to prevent a deficiency judgment against herself and husband Mrs. Skinner was willing to deed the land to plaintiff. That reason for making the settlement could very naturally and consistently be followed up by the agreement, as testified to in substance by Mrs. Skinner, that the conveyance was made to the plaintiff to satisfy him, to help him get his money out of the deal, and to free her from responsibility. That there was no intention of the conveyance being made in part payment of the debt is clearly indicated by the failure to mention or agree upon any value of the land or amount for which it should be conveyed. In such circumstances, and where a contrary intent is not manifested, the finding that the intent was to cancel and extinguish the mortgage debt is justified. *Weston* v. *Livezey*, 45 Colo. 142, 100 P. 404; *Citizens' Trust Company* v. *Going*, 288 Mo. 505, 232 S. W. 996; 41 C. J. 776.

The contention of the plaintiff is that for the deed to the land the mortgagors were to be freed from personal liability of the mortgage debt. But if he was permitted to recover on his chattel mortgage it is plain that the defendant would in turn be entitled to recover against the mortgagors for the seed in question which it took from them, the final result of which would be to indirectly subject the mortgagors to personal liability for the claim sued upon by the plaintiff. This result would violate the purpose and intent of the parties even though the plaintiff's interpretation of the transaction be adopted.

Our conclusion is that the record shows no error. Judgment affirmed.

ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.

STRAUP, J., dissenting.

The plaintiff brought this action to recover damages for an alleged conversion by the defendant of alfalfa seed amounting to $450. The plaintiff claimed a lien on the seed in virtue of a chattel mortgage. The case was tried to the court without a jury. The court, in accordance with one of the pleaded defenses, found that the indebtedness, to secure the payment of which the chattel mortgage was given, was fully paid, satisfied, and discharged and hence dismissed the action. The plaintiff appeals claiming that the finding is not sufficiently supported by and is against the evidence. There was no other finding made upon which the judgment can rest. Thus, if the finding falls, the judgment falls.

The chattel mortgage was given in April, 1925, to the plaintiff by C. L. Skinner and his wife, Mary Jarvis Skinner, on crops of alfalfa seed growing and to be grown on described real estate owned by Mrs. Skinner for the years 1925, 1926, and 1927, to secure the payment of a promissory note of $3,000 executed by the Skinners to the plaintiff. Prior to the giving of the mortgage, Frank Jarvis a former husband of Mary Jarvis Skinner, and Mary Jarvis his then wife, had executed and delivered to the plaintiff a mortgage on the real estate to secure the payment of a promissory note of $3,000 executed by them payable to the plaintiff. Thereafter Jarvis died and his widow marrying Skinner, the Skinners gave the chattel mortgage as additional security to secure the same indebtedness of $3,000. The seed grown on the real estate in 1925 was by Skinner in February, 1926, delivered to the defendant who sold it in course of trade, gave Skinner credit therefor and applied the proceeds on unpaid advances made to him by the defendant for the previous year. No part of the principal or interest had then been paid on either of the mortgages or notes. In November, 1926, nine or ten months after the seed was delivered to the defendant, Mrs. Skinner gave the plaintiff a quitclaim deed to the real estate.

The sole question on this appeal hinges on the purpose for which the deed was given. If, as contended by the defendant, it was given in full payment of and to satisfy and discharge the whole of the indebtedness to secure which the mortgages were given, then is the finding justified and the judgment right. On the other hand if, as contended by the plaintiff, the deed was given merely to relieve Mrs. Skinner and her husband or either or both from a deficiency judgment or personal liability beyond the mortgaged properties and the plaintiff to look to the real estate and the mortgaged crops alone upon which the indebtedness was a lien, then the indebtedness was not satisfied or discharged by the giving of the quitclaim deed.

The defendant had the burden of showing that the quitclaim deed was given and accepted with the intention of the parties that it was to be in full payment and satisfaction of the entire indebtedness. Unless that burden was sustained by sufficient evidence to justify the finding to that effect, the defendant on such theory and the only theory upon which the judgment was rendered was not entitled to prevail. The evidence respecting the matter is brief. But two witnesses testified concerning the subject, the plaintiff and Mrs. Skinner. The plaintiff, after giving evidence that the seed was delivered to the defendant by Skinner, that it was sold by it and the proceeds applied to advances made by it to him on the previous year and after testifying concerning the chattel mortgage and that it had not been paid, on cross-examination was asked, and he answered as follows:

"Q. You say that Mr. Skinner has not paid you on this matter, Mr. or Mrs. Skinner. How much were they owing you at the time they executed this mortgage? A. If I remember rightly, the mortgage is for three thousand dollars, secures a payment of three thousand dollars.

"Q. Does that include all they owe you? A. No, they owed me interest and taxes which I have advanced for this water assessment, the exact amount I have not in mind.

"Q. This indebtedness secured the loan you made them on a farm down in Hinckley somewhere? A. Yes.

"Q. Last year some time they deeded the farm back to you? A. Yes.

"Q. What was the consideration for that deed? A. If I remember the deed, it said ten dollars. They quit claimed their right and title.

"Q. Just for ten dollars? A. A further consideration which was discussed informally. It was not incorporated in the mortgage, saying that I would not proceed to get a deficiency judgment against them.

"Q. In other words they were clearing up their indebtedness to you by deeding back that land? A. I would not say so.

"Q. You would not say so? A. No.

"Q. You didn't intend that they should give you that land for ten dollars? A. But I intended they should give me that land or foreclose and take a deficiency judgment.

"Q. At that time this note was due, wasn't it? A. Yes. Let me say—no, I had given them previously a renewal which I think ran a little beyond that date.

"Q. At that time you held their note for this obligation? A. Yes.

"Q. You had a verbal agreement with them at that time that you would not proceed against them on any indebtedness? A. I said it was to save her the possibility or certainty of my getting a deficiency judgment against her or her husband.

"Q. And for that reason she gave you the deed to this land? A. Yes."

The plaintiff further testified that he still possessed and held notes and the mortgages in question. The only witnesses called by the defendant was Mrs. Skinner. She, on direct examination, after testifying that she had business dealings with the plaintiff testified that:

"He had a mortgage on a piece of ground that belonged to me. During last fall (1926) I gave a quit claim deed to Mr. MacArthur upon the land upon which that mortgage was given. Mr. MacArthur called one afternoon and wanted to know what we could do about the payments that were due on it, and I told him that due to the water situation and these circumstances that came up, the crop has been a practical failure and we didn't have anything to pay with, and I told him if it would satisfy him and help him any to get his money out of the deal I would turn over a deed to him if that would free me from the responsibility of the mortgage.

"Q. Did you sign a deed at that time? A. No, I didn't. Mr. MacArthur fixed the deed out and sent it to me later and I signed it and mailed it back to him.

"Q. You had possession of the land at the time?   A. Yes.

"Q. Is that the land upon which you gave a crop mortgage in the year 1925?   A. Yes."

## On cross-examination she further testified:

"Q. You have stated practically all that was said or done in the matter?   A. All that I remember of.

"Q. You never got back any of his mortgages?   A. No.

"Q. Or any papers from Mr. MacArthur at all?   A. No sir.

"Q. Never demanded any return of any papers?   A. No.   Mr. MacArthur has always been perfectly honorable in everything he did, and I assumed that everything was perfectly all right.

"Q. Nothing said about the chattel mortgage?   A. No, nothing said about that at the time, and I took it as, the understanding that I was through when I gave him a deed, that is all there would be to it, and that we had nothing to fix up with anything else. I could not see any other way out but to turn the property over to him and let him do the best he could do with it."

## On redirect examination she further was asked and she answered:

"Q. That quit claim deed stated a ten dollars consideration. He didn't actually hand you ten dollars at that time?   A. No, the consideration was really what was in both our minds was to get the property straightened up.

"Q. That is what he represented to you?   A. That is what he represented to me."

No other or further evidence on the subject was adduced by either party. The finding made by the court, "that the entire amount of said indebtedness secured by the said crop and chattel mortgage described in plaintiff's complaint has been fully paid, satisfied and discharged," rests entirely upon the testimony of the plaintiff and of Mrs. Skinner just referred to. With respect to it the defendant affirms and the plaintiff denies that it is sufficient to support the finding as made. No claim' of payment is made other than the giving of the quitclaim deed.

I think the contention of the plaintiff should prevail. The testimony of the plaintiff quite clearly shows that the quitclaim deed was not given in payment of or in discharge of the indebtedness; and that it was given only on an oral agreement to relieve the Skinners from a deficiency judgment or a personal liability beyond the mortgaged property. If such was the purpose for which the deed was given, it is not seriously contended by the defendant that the indebtedness was, as found, fully paid or satisfied or discharged. At any rate, the authorities are to the effect that under such circumstances the indebtedness was not satisfied or discharged. 41 C. J. 785-787; 2 Jones on Mortgages (7th Ed.) § 871; *Barth* v. *Severson,* 191 Iowa, 770, 183 N. W. 617; *Schexnailder* v. *Fontenot,* 147 La. 467, 85 So. 207; *Bentley* v. *Vanderheyden,* 35 N. Y. 677; *Donnelly and Wife* v. *Simonton,* 13 Minn. 301 (Gil. 278); *James* v. *Williams,* 102 Kan. 231, 169 P. 1163; *Tripp* v. *Vincent,* 3 Barb. ch. (N. Y.) 613.

The question therefore is, Is the testimony as given by Mrs. Skinner in conflict with that as given by the plaintiff, and is it in and of itself sufficient to justify the finding that the indebtedness to secure which the chattel mortgage was given was fully paid, satified, and discharged? I think that should be answered in the negative. Her testimony with respect to the subject is quite uncertain and indefinite, but what of reasonable certainty may be gleaned from it is not in substance inconsistent with the testimony of the plaintiff. Her testimony fairly shows that when the quitclaim deed was given not anything was said concerning the chattel mortgage. She, however, in such connection testified as to what her understanding was, not what the plaintiff understood or what they said in such particular, but even what in such respect was testified to by her was not in effect inconsistent with what was testified to by the plaintiff. While no particular language is necessary to show an accord and satisfaction, yet, it is necessary to show that money offered or paid or property turned over in full satisfaction of

a demand or indebtedness was accompanied by such acts and declarations as to show that the money or property accepted was in satisfaction of the demand or indebtedness, and must be such that the party to whom the money was offered or paid or property turned over was bound to understand therefrom that if and when he took or accepted it, he did so as payment in full and in satisfaction of the demand or indebtedness. 1 C. J. 557. I do not think Mrs. Skinner's testimony met such requirement. In a portion of her testimony she testified "I told him (plaintiff) if it would satisfy him and help him any to get his money out of the deal I would turn over a deed to him and that would free me from the responsibility of the mortgage," and in other portions she testified she could not see any other way "but to turn the property over to him and let him do the best he could with it." The language "free me from responsibility of the mortgage," as shown by her testimony, referred to the mortgage on the land and the only mortgage theretofore in her testimony referred to by her. And then, what meaning is to be attached to the language, "free me from responsibility of the mortgage"? The reasonable meaning to be given it is, to free her from a responsibility or liability beyond the mortgaged property, a release of a personal liability. I do not see any other reasonable meaning to be given it; and that is in harmony and not inconsistent with the testimony given by the plaintiff.

Further, when the quitclaim deed was given, the fact that not anything was said with respect to the plaintiff giving up or returning the notes or either of the mortgages, and that no demand at that or at any time was made by Mrs. Skinner or her husband for a surrender of either of the notes or mortgages, and the fact that they were not surrendered by the plaintiff but were still in his possession and held by him, while not conclusive that the indebtedness was not fully paid or satisfied or discharged, yet such facts presumptively are of much probative force to that effect. 41 C. J. 793.

Further, when the seed was converted by the defendant, if at all, it was converted at a time when the chattel mortgage confessedly was in full force and effect and remained wholly unpaid. The quitclaim deed was not made until nine or ten months thereafter. While that would not justify the plaintiff in asserting his claim against the defendant, if the indebtedness had theretofore in fact been fully paid, satisfied, and discharged, yet would not preclude him from asserting his demand, against the defendant, if the plaintiff had merely released the Skinners from a personal liability of the mortgage or note. Plaintiff's claim against the defendant being ripe and his course of action complete against the defendant when the deed to the real estate was given, it, in my judgment, required something more than the rather uncertain testimony of Mrs. Skinner to show that the plaintiff by accepting the deed to the real estate thereby intended to or did release or waive his claim against the defendant. There is not anything in the record to show the value of the real estate and not anything upon which to indulge a presumption as to its value, other than the fact that the chattel mortgage was given as additional security to secure the same debt for which the real estate mortgage was given from which it may be inferred that the real estate was not deemed of sufficient value to secure the indebtedness.

I thus am of the opinion that the finding was not supported by sufficient evidence and that the judgment should be reversed and the case remanded for a new trial.