PENN ATHLETIC CLUB BUILDING, GIRARD TRUST COMPANY, TRUSTEE FOR FIRST MORTGAGE BONDHOLDERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9007.  Promulgated May 24, 1948.

*Sanford D. Beecher, Esq.*, for the petitioner.
*Wm. D. Harris, Esq.*, for the respondent.

926.

932

## OPINION.

DISNEY, *Judge*: The primary issue relates to the rentals realized from the Penn Athletic Club Building during the taxable years. The respondent contends that as a result of the deed executed by the club on January 21, 1942, petitioner became the absolute owner in fee of the club building and should have included the rentals in its gross income; but the deficiency notice as to 1942 disallowed the deduction for taxes paid, taken in the first return filed. Petitioner contends that the rentals are not includible in its gross income because, under paragraph 14 of the supplemental mortgage agreement, it had only the right as a mortgagee in possession, to lease and operate, apply the rentals to taxes, expenses, and the mortgage debt, account for and pay to the club any balance remaining, and then retransfer the property itself to the club.

It is well settled that a mortgagee in possession is obligated to apply collected rents on the mortgage debt, and to account for the surplus. See 41 C. J. 630, citing a great number of cases. Therefore, the crucial question here is whether the petitioner was a mortgagee in possession, for if it was, the rents received were merely collections upon the debt

and to tax them as income would be a tax upon capital being recovered. A mortgagee in possession has been defined as "one who has lawfully acquired actual possession of the premises mortgaged to him, standing upon his rights as mortgagee and not claiming under another title, for the purposes of enforcing his security upon such property or making its income help pay his debt. * * *" See 41 C. J. 612 and cases cited. One holding under an absolute deed given as security is a mortgagee in possession. *Peugh* v. *Davis*, 113 U. S. 542; *Mahoney* v. *Bostwick*, 30 Pac. 1020; *Jordan* v. *Warner's Estate*, 83 N. W. 946; *Wilmer* v. *Light Street Savings & Building Assn.*, 122 Atl. 129.

The evidence discloses that because of the prevailing court practice to restrict leases by mortgagees in possession to one year, an additional remedy had been placed in the supplemental mortgage, as paragraph 14, empowering the mortgagee, after default of one year, to demand a conveyance of the property and to lease or sell it and account to the mortgagor; and that on January 13, 1942, when the club had been in default for a continuous period of over one year, petitioner made a request in writing that the club transfer and convey to it the mortgaged premises, equipment, furniture and furnishings, etc., subject to the lien of the mortgage, in accordance with the terms of paragraph 14 of the supplemental mortgage agreement. Examination of the provisions of paragraph 14, and of the facts set forth in our findings, which need not here be restated, convinces us that the parties contemplated a transfer of title under the remedy provided in the mortgage and as additional security only, and that petitioner was a mortgagee in possession, and, as such, liable to account to the club for income realized from the mortgaged premises, after payment of the mortgage indebtedness and expenses. Paragraph 14 of the supplemental mortgage agreement refers to transfer of the property to the mortgagee as "This remedy," saying: "This remedy * * * shall be in addition to all other remedies granted under the provisions of said mortgage and this Agreement, and any of said remedies may be pursued singly or concurrently."

The respondent can not, and does not, deny that the demand for the conveyance, made on January 13, 1942, was under the mortgage; but, in effect, he contends that the conveyance dated January 21, 1942, was nevertheless not made under the mortgage, but was (despite the specific retention of mortgagee status by the petitioner, in the deed set forth) an absolute conveyance, rendering the petitioner liable for all income, yet depriving it, because of ownership, of the right to deduction for taxes paid by it, but assessed while the club held title. We are unable to find anything in the record to demonstrate that in a period of a few days the petitioner ceased to proceed under its mortgage remedies, under which it started on January 13; on the contrary, we think it clear that it did so proceed. It obtained a

"conveyance" just as paragraph 14 of the supplemental mortgage agreement provided, by giving the notice there provided. The conveyance was carefully made subject to the mortgage lien, and to continue the mortgage "in full force and effect," also, "for all purposes as though the present conveyance had not been made." Could language be plainer that the petitioner expressly was "standing upon his rights as mortgagee and not claiming under another title," precisely within the above definition of mortgagee in possession? On the face of the writings alone, we find no sufficient reason to think that the position of mortgagor and mortgagee was abandoned, but conclude that, as the instruments indicate, the status was preserved. The mortgagee did take possession, and such taking of possession can not be attributed solely to those portions of the deed expressing the usual forms of absolute conveyance, but is seen to be based upon the whole contract expressed in the instrument (to say nothing just here of the agreement otherwise proven). It immediately leased the property—as provided for by paragraph 14, after conveyance demanded and obtained. In leasing and accounting it is "operating" the property as by the mortgage specifically empowered. In our opinion the deed itself demonstrates that the petitioner did not become absolute owner, but was merely enforcing the mortgage, collecting rents, and paying back taxes for the benefit of the grantor and its bondholders, and it was in a position of accountability both to them and to the club if and when the indebtedness should be paid. It is to be noted that sections 1 and 2 of article VI of the mortgage require written notice of default, and to put the whole indebtedness in default for foreclosure. Such notice has never been given.

Essentially the respondent's position is that on January 21, 1942, the club waived its right of redemption and conveyed in lieu of foreclosure. The deed does not so state, as it could easily have done and, it would seem, logically would have recited, if such had been the intent. On the contrary, the mortgage is specially mentioned only to maintain it as before. Of course, the conveyance provided in paragraph 14 of the supplemental mortgage agreement could not mean an absolute conveyance, for, if so, it would have been altogether superfluous then to provide that the grantee could lease or sell. An absolute grantee need be given no such rights. It is to be noted that the respondent does not say that the deed intended by the mortgage was to be an absolute conveyance. Such a provision would be ineffective against the right of redemption, for a multitude of cases, including cases from Pennsylvania, hold that, under the maxim "Once a mortgage always a mortgage," a mortgagor can not in advance "by any device or contrivance" waive his right to redemption. See authorities cited, 42 C. J. 348, 356. "It is beyond the power of the parties." *Peugh* v. *Davis, supra.* Moreover, though of course it is recognized that it is possible for a

mortgagor subsequently by deed to give up its equity of redemption to a mortgagee, it is hornbook law that if the original instrument was by way of security it should plainly appear that the later deed was intended as absolute and not by way of security. The transaction will be "closely scrutinized." *Peugh* v. *Davis*, 96 U. S. 332, 337.

The presumption is that there is mere continuation of security. *Guttenfelder* v. *Iebsen*, 300 N. W. 299, citing, *inter alia*, the annotation in 129 A. L. R. 1435, which, on this point, says:

> Generally, a conveyance of mortgaged premises by mortgagor to mortgagee operates as a bar to equity of redemption only when it clearly and unequivocally appears that both parties so intended that it should, and otherwise it will be regarded as a mere change in form of security operative as a mortgage.
>
> \* \* \* \* \* \* \*
>
> Where mortgagor of realty executes to his mortgagee a deed of the realty for a nominal consideration only, deed will be presumed to be a continuation of the security, and the right of redemption thereon is presumed to continue.

In 19 R. C. L. 387, we find:

> \* \* \* But any contract by which the mortgagor sells or releases his interest to the mortgagee is viewed suspiciously and carefully scrutinized in a court of equity. \* \* \* However, it is the general rule that a conveyance of the mortgaged premises by the mortgagor to the mortgagee operates as a bar to the equity of redemption only when it clearly and unequivocally appears that both parties so intended that it should; otherwise, it will be regarded as a mere change in the form of security operative as a mortgage. \* \* \*

*Koob* v. *Zoller*, 3 N. W. (2d) 130, requires careful scrutiny of a conveyance of mortgaged premises to a mortgagee, and says it will be upheld only if it "clearly appears that an absolute sale and not a transfer for security only was within the contemplation of the parties." Both the *Guttenfelder* and *Koob* cases stress that lack of cancellation and surrender of evidence of indebtedness and mortgage indicates that the conveyance is not absolute. Here, the mortgage was specially kept alive, the mortgage and bonds were never surrendered, and only personal liability was released. Under the above authorities, how can it be said that it "clearly, and unequivocally appears" that absolute conveyance was intended, contrary both to the evidence of the parties, their treatment (relied on in the *Koob* case), the presumption, and the continuation of the mortgage in the deed itself? In logic this principle is even more applicable here, where the mortgage itself provides a deed as a remedy, and one patently not absolute, since additional rights to lease or sell under it, are given. The "conveyance" provided here in case of default does not wipe out the mortgagor's equity of redemption, for, as above seen, that "right is inherent in, and essential to, every mortgage." 42 C. J. 343; *Jones* v. *Gillett*, 118 N. W. 314; 121 N. W. 5; *Platt* v. *McClong*, 49 Atl. 1125; and a power of sale in a deed of trust does not destroy the redeemable character of the instrument so long as the power remains unexecuted. *Bell Silver & Copper Mining*

*Co.* v. *First Nat. Bank of Butte*, 156 U. S. 470. The petitioner has never sold the club building. The power of redemption remains, unless, for some reason which we are unable to discern, an absolute conveyance, wiping out equity of redemption, is demonstrated. We think that right is shown not to be destroyed.

In *Peugh* v. *Davis*, 96 U. S. 332, the Court says:

\* \* \* Without citing the authorities, it may be stated as conclusions from them, that a release to the mortgagee will not be inferred from equivocal circumstances and loose expressions. It must appear by a writing importing in terms a transfer of the mortgagor's interest, or such facts must be shown as will operate to estop him from asserting any interest in the premises. \* \* \*

In that case the Court had under consideration an original deed, held by it to be security for a loan, and then another deed under seal, with general covenants of warranty, and a special covenant against any claim against the title. Accompanying the second deed, of the same date, was a receipt for $2,000 purporting to be in full payment for the purchase of the land. Yet the Court found that it was a mortgage. The deed here involved is obviously not so absolute in form as in that case, for on its face it (the deed here) not only refers to the mortgage, but *preserves it intact*.

In *Wilmer* v. *Light Street Savings & Building Assn., supra*, involving this question the Circuit Court said:

If the mortgage lien \* \* \* was not extinguished by merger, in consequence of the conveyance from the mortgagor, \* \* \* then the association must be treated, for the purposes of this case, as having held the properties in the character of mortgagee in possession after default. \* \* \*

Merger here was specifically prohibited. The petitioner is therefore mortgagee in possession. In *Caro* v. *Wollenberg*, 163 Pac. (Ore.) 94, this question arose and the court said that a deed conveying a mortgagor's interest to the mortgagee must be "without any condition whatever permitting redemption." Yet in the instant case we find such retention of the redemption privilege—simply because the "mortgage shall be, remain and continue in full force and effect for all purposes as though the present conveyance had not been made." If the mortgage was preserved, the right of redemption was preserved—and petitioner is seen clearly as mortgagee in possession. Under general principles of public policy as to equity of redemption, almost any mention of existent mortgage is sufficient to defeat a claim of absolute deed; yet here we see the mortgage specifically kept alive.

The club kept that right, in precise language. Can it be doubted that in a contest it would maintain that right? Certainly its position is far stronger on the face of the instrument than in *Peugh* v. *Davis*, 96 U. S. 332, where not only was there no hint of mortgage, but there were words of absolute conveyance, equally as categorical as here. We can not but conclude that the deed of January 21, 1942, is insufficient

to translate the petitioner from the position of mortgagee to that of absolute owner.

Moreover, we think it clear from the evidence, outside of the deed itself, that the agreement was not one of absolute conveyance. With the deed containing both ordinary expressions indicative of absolute conveyance and those relative to nonmerger of interest and continuation of the mortgage, it is apparent that the instrument is not unambiguous. Obviously, evidence to explain is properly considered. A host of cases so state. The respondent so agrees, if there is ambiguity. This is not a matter of proving a deed to be a mortgage, but of clarification of the status of what had been a mortgage. Moreover, even without ambiguity in the instrument, it may be explained, in this case involving a third party. *Commissioner* v. *Berkeley Hall School*, 84 Fed. (2d) 539; *Russell* v. *Southard*, 53 U. S. 138; *Peugh* v. *Davis*, 96 U. S. 332; *Indianapolis Glove Co.* v. *United States*, 96 Fed. (2d) 816; *Macon, Dublin & Savannah Railroad Co.*, 40 B. T. A. 1266, stating that we have uniformly denied application of the parol evidence rule where a third party is a litigant involved, and collecting cases. With the deed shortly following the demand for it under the mortgage, and specifically provided for in the mortgage, logic dictates that it was under such mortgage. What indicates otherwise?

The respondent's principal argument that the deed was absolute is, first, that the Government demanded or required that the petitioner become absolute owner of the property; and, second, that equitable powers must be exercised in order to find that the deed was not absolute.

Clearly, the argument fails in both respects.[3] That the Government demanded or required absolute deed is repeatedly stated by the respondent on brief. Yet the only evidence on the point is *contra*. It is that counsel for the parties and for the United States Government, which was leasing, considered and examined the mortgage and supplement and the Government counsel suggested the request of conveyance under the additional remedies provided by the supplemental mortgage, and thought the lease could thus be made for the seven-year period desired.[4] Thus we see that an absolute conveyance to petitioner was

---

[3] The respondent also suggests (without pleading estoppel) that the petitioner is estopped to deny against the Government that the deed to it, lessor to the Securities and Exchange Commission, was not absolute. If the principle were applicable, and we do not so consider it, the facts show clearly that the Government representatives were fully informed of all facts prior to the lease.

[4] The only evidence on the point is that shown on pages 34, 35, and 36 of the transcript, as follows:

"* * * It was at that stage of the proceeding that the question came up as to how the SEC could be given a lease, and the Penn Athletic Club go elsewhere and have sufficient or some necessary furniture and equipment to provide for it.

"At that time, for the first, negotiations with Government counsel in Washington (naming the parties), were conducted as to our leasing with the consent of the Penn Athletic Club— of the Girard Trust Company leasing to the SEC under its rights under the mortgage.

"In those negotiations I was asked by Government counsel whether the Girard Trust Company could make the lease, assuming that the Penn Athletic Club would consent to it

neither demanded nor required by the Government; instead, it was fully aware that the lease rested on a conveyance under the mortgage remedies, and, considering the specific provision therein for conveyance and lease, was obviously justified in leasing from such a lessor.

The respondent, however, as above noted, argues that equitable powers must be exercised or the deed accepted here as absolute. The idea is completely untenable. We need not exercise powers of equity in order to ascertain the facts as to liability for taxation. In *Macon, Dublin & Savannah Railroad Co.*, *supra.*, we said that extraneous evidence is admissible to inform us of the material facts and held that the transaction purporting to be an absolute sale was not such, but merely transfer to a nominee, and we collected cases where we had held instruments to be other than as appeared on the face, among them *United National Corporation*, 33 B. T. A. 790, where we held that a written agreement was not absolute sale as described, but security for a loan. The point is the same here. The leading case is *Helvering* v. *Lazarus & Co.*, 308 U. S. 252, affirming 32 B. T. A. 633, and holding that a deed in fee simple, with lease back, was in fact a mortgage and did not deprive the grantor of its right to deduct depreciation. The Court said:

* * * In the field of taxation, administrators of the laws, and the courts, are concerned with substance and realities, and formal written documents are not rigidly binding. Congress has specifically emphasized the equitable nature of proceedings before the Board of Tax Appeals by requiring the Board to act "in accordance with the rules of evidence applicable in courts of equity of the District of Columbia." * * *

Other cases to the same effect are: *Tex-Penn Oil Co.* v. *Commissioner*, 83 Fed. (2d) 518, holding in a tax case that face of contract does not govern, but real agreement may be shown by extraneous evidence; *United States* v. *Board*, 14 Fed. (2d) 459, a tax case, to the same effect; *Park Chamberlain*, 41 B. T. A. 10, a quitclaim deed held on the evidence not to prove a sale. The respondent's view, that the deed,

---

and give up possession for a long term, and the Government had estimated its expenditures required on the building would be $600,000 to $750,000.

"I then informed Government counsel of the practice of our courts here in Philadelphia. We examined the supplemental mortgage together, and the original mortgage, and Government counsel then stated that it seemed to them if we could request the Penn Athletic Club under the terms of the additional remedies provided for in the supplemental mortgage indenture, to make the conveyance to us as trustees, that is to the Girard Trust Company as trustee, that then we could make the lease for the seven years : because the title, being in our name as trustee under the original indenture, would require that the Penn Athletic Club, if they undertook to lease or sell it, would have to have the Girard Trust Company consent to or join in it.

"It was then decided at that time that the lease, if and when that could be worked out and we obtained possession—I say 'we', I mean the Girard Trust Company obtained possession of the Penn Athletic Club—that the lease would then be made between the Girard Trust Company as trustee under the mortgage indenture and the Girard Trust Company, trustee under this conveyance that had been made to it. And the lease was thereafter executed in accordance with arrangement made by Government counsel, between the Girard Trust Company as the trustee under the original indenture, and as trustee under the deed of conveyance."

being (allegedly) absolute in form, is not subject to explanation by evidence, is contrary to the body of the law on the subject.

Moreover, on the evidence, which is entirely consistent with the recitals in the deed as to the mortgage, a proposition of absolute conveyance was intentionally not made, not only because all furniture and furnishings would in that case have been required, instead of the club keeping $25,000 value thereof, but the attorney for the club expressly did not make such a proposition because he thought the property was worth more than the debt. Also, immediate possession in such case would be required.[5]

The Government representatives said they must know the next day. An absolute conveyance was negatived, moreover, by the understanding of the parties. Their treatment of the transaction is consistent with such understanding. They agreed that an insurance policy was retainable by the mortgagee for its security, under article IV, section 32, of the original mortgage, providing for its assignment as additional security, though obviously, had the conveyance been absolute, with no retention of mortgagee status, such insurance policy, of a value of about $1,670 would have been the property of the club, which had purchased it. Certainly, this is mutual recognition that the mortgage status had not changed. The statement attached to the recorded deed, recites that it is being made under the mortgage indebtedness "and is not in lieu of foreclosure  *   *   *," indicating that at that time, and as now contended, it was the intent not to take an absolute conveyance or to obliterate the mortgage. The petitioner was advised

---

[5] At pages 41–42 of the transcript the evidence is:

"At that meeting that night, the Board of Governors then appointed one of the members—Judge Ladner—who was on the Board, to draft the resolution in accordance with what I have stated  *   *   *.

"After the resolution had been drafted and submitted to the Board of Governors, and before it had been adopted, I was then representing the trustee at that meeting, and among other things I remember being asked by Mr. Ladner whether, if the Penn Athletic Club would make an absolute conveyance in fee simple to the Girard Trust Company, whether or not the Girard Trust Company would accept it in complete satisfaction. My answer to Mr. Ladner at the time was: If such a proposal were made by the Penn Athletic Club, the Girard Trust Company would accept it because they believe that the building in the future would be sufficient value to let them out; but they would not release and turn over in that event any furniture or furnishings; and would have to be on condition that possession was given immediately without that being done.

"Well, Mr. Ladner also stated that he thought we would be willing to do that because expert testimony would show that the building was worth $3,000,000. That proposal was not made. Instead of that, the conveyance was made in answer to the request of the Girard Trust Company, trustee, for the conveyance to be made to it in accordance with the terms of the supplemental mortgage indenture; and the resolution was thereafter adopted as prepared by Mr. Ladner to that effect."

Again, at pages 60–61 of the transcript the testimony is:

"*   *   * At that meeting, prior to the adoption of that resolution, inquiry was made by Mr. Ladner, from me representing the Girard Trust Company, whether the Girard Trust Company would be willing to accept an absolute conveyance of the property in full satisfaction and release of everything. I said yes, it would if such proposition came from the club; but no proposition had come from the club. He said, yes, that is correct, 'We are not prepared to make that because we believe the property under expert testimony is worth $3,000,000.'  *   *   *"

by counsel prior to the conveyance that it would receive same under the mortgage indenture and be required to account. The release given and accepted, dated January 22, 1942, not only recites that the club "owns and occupies" the property (though the deed had been executed January 21, 1942), but also, reciting the history of the matter, and action of the club in approving the transfer, states that the foregoing action was taken by the said directors and members "to permit the Trustee to enter into immediate lease of the mortgaged premises. * * *" It is true that the quoted statement continues: "and to permit the Trustee to become the owner of said mortgaged premises and the equipment, furniture and furnishings thereof, for all purposes whatsoever, under and subject however to the lien of said above recited mortgage as modified * * *," but this language only emphasizes the fact that the petitioner was to "become the owner *under* * * * the mortgage*" and subject to its lien—which is nothing more than the supplemental mortgage remedy provided. That is not absolute ownership. The whole evidence and the necessity for prompt lease to the Government are convincing that, though in form the deed has some similarity to an absolute conveyance, it was qualified, both on its face and in fact, and was, under the mortgage remedies, so conveyed as to cause the Government to accept the lease, and an unqualified transfer was neither made nor intended. The lease was made "as trustee" and "under deed of conveyance"—quite unnecessary if petitioner was absolute owner. Why, if it was the owner outright of the property, would the petitioner subordinate *the mortgage* to the loan of $275,000 from Pennsylvania Co. for Insurances on Lives and Granting Annuities? Why, if it was the absolute owner of the furniture and fixtures taken over, would it account for the $79,524.78 received from the sale thereof? The mutual release dated May 22, 1942, was intended to cover only settlement of accounts listed therewith (having to do with small items such as rents, inventories, wages, utility bills, etc., at the time of change of possession), and (in connection with the $440 matter arising from nonregistration of bonds) was found by the United States District Court to contemplate nothing further.[6] It may not fairly be given broader effect here.

It specifically states that the list includes all "liabilities" of the Girard Trust Co., trustee, and all sums payable by it to the club, and all "liabilities" of the club and "all sums payable" by it to petitioner. It does not list the indebtedness under the mortgage. Obviously the remedy *in rem* against the property was not covered, either in text or intent.

---

[6] It is noteworthy that the court said that the release on its terms was executed to effect a settlement of accounts between the debtor and trustee "arising out of the *transfer of property* to the trustee *for the liquidation of the security of the mortgage* as modified under the plan." (Italics ours.)

The instrument refers to the conveyance to petitioner as made in compliance with the request of Girard Trust Co., trustee. The mortgagee went into possession under the arrangement made. It used the rentals from the property to pay taxes previously accrued, for the protection both of bondholders and mortgagor. We see the petitioner, therefore, in the position of a mere manager of the property, a mortgagee in possession, through which the rentals passed for the benefit of others, and not taxable thereon.

A receiver of less than all of the property of a taxpayer is not required to file an income tax return. Sec. 142 (a), I. R. C.; Regulations 103, secs. 19.52–2, 19.142–4. The petitioner here was in an analogous position. It had, pursuant to mortgage remedies, taken possession of the property mortgaged and was operating it instead of the mortgagor and for its account. The taxes accrued upon the club property, payment of which in 1942 is here involved, were not petitioner's taxes (as respondent emphasized by denying deduction thereof), and petitioner was like a receiver, in the position of applying another's income upon another's taxes. In the absence of surrender of the club's equity of redemption, the petitioner acted for the mortgagor, getting the rents for the better security of the bondholders. The release of personal obligation in nowise released the mortgage, which as seen, was specifically preserved.

The taxes against the property paid during the years in question are approximately equal to the gross rents received by petitioner, so that it is apparent that, had the club remained in possession, its deductions for its taxes would have more than equalized its net income. The club would not under the above authorities, and on the facts here, be deprived of its right of redemption, and the same facts show that the petitioner paid the mortgagor's taxes with mortgagor's income, for which it is accountable under the mortgage. Entry to foreclose does not transfer title, but merely increases security; and accounting is necessary for rents and profits between mortgagor and mortgagee in possession. *Hadley Falls Trust Co.* v. *United States*, 110 Fed. (2d) 887. In the same case, in the District Court, 22 Fed. Supp. 346, it was held that a mortgagee in possession is not taxable upon rents received, which, the court says, go to a reduction of a debt. The point was not definitely touched upon by the Circuit Court in vacating and remanding for further proceedings, but its holding, above referred to, that accounting for rents is necessary, seems to approve the view of the lower court. That the mortgagee here felt additionally secure, when it acquired possession and rents of at least $18,750 (later $16,666) a month, can not be questioned.

The club was released from the debt, but a personal release of a debtor does not extinguish a mortgage. The respondent does not so argue. On the contrary, he states that "The mortgage, however, re-

mains in existence merely for the benefit of the mortgagee to preserve any *remedy* or *remedies* it may afford the creditor-mortgagee." He continues that the remedy to sue for a deficiency or other remedies was valueless, since the debtor had no assets except the building, and that all prior estates were under common law principles merged in the fee simple estate. No authorities are cited and the idea is obviously erroneous, since merger is a question of intent. *Parks* v. *Welch*, 199 Atl. 506; *Felgner's Administrator* v. *Slingluff*, 71 Atl. 987. The intent here is beyond doubt, and merger here is shown to be specifically prohibited. In *Schexnailder* v. *Fontenot*, 85 So. 207, it was held that, even though a Louisiana statute provided that mortgages are extinguished by the extinguishment of the debt for which the mortgage was given, the personal release of the debtor would in no sense, from the creditor's standpoint, discharge or extinguish the debt; also that, though another statute required that there be a personal indebtedness or obligation to support the lien of a mortgage, this does not mean that there shall be a personal liability. After quoting the language of the statute, the court said:

> In the larger sense, this language means that there must be a principal indebtedness or obligation to support the accessory stipulation or lien or the mortgage, but this does not mean that there shall be a personal liability. A mortgage, whether conventional or judicial, imposes a real right or obligation upon the property bound for its discharge. C. C. 2012 and 3282. There is nothing to prevent, and, in fact, it is not uncommon for a mortgage to be given with the stipulation that the mortgagor shall not be personally bound beyond the value of the property so mortgaged. * * *

In *Barth* v. *Severson*, 183 N. W. 617, it was held that a release of personal liability on the judgment would have no effect on the legality of the foreclosure proceedings; the court stating that the release from personal liability "amounted to no more than an election on the part of the then holder of the note and mortgage to proceed strictly in rem and waive his right to a claim in personam." This he had a right to do without in any way affecting the validity of the foreclosure proceedings.

*MacArthur* v. *Peppard Seed Co.*, 286 Pac. 955, collects cases and authorities to the effect that an agreement to relieve from personal liability does not satisfy or discharge the mortgage. 2 Jones on Mortgages (7th Ed.), sec. 871, and 41 C. J. 785, are cited.

41 C. J. 785, on this subject, states:

> The debt and the mortgagor's liability for it are not the same thing in law. Hence the mortgage is not discharged if it is the intention of the parties merely to release the mortgagor's personal liability for it and not to extinguish the debt.

Is it not more than plain that the mortgage was not released here? It was, on the contrary, to "continue in full force and effect for all

purposes as though the present conveyance had not been made." And absence of personal liability does not preclude the right to redeem. 42 C. J. 344; *Russell* v. *Southard, supra; Conover* v. *Palmer*, 108 N. Y. Supp. 480. That right the club never gave up. That right left the petitioner a mortgagee in possession, merely operating the property.

We have before us not only the above discussed transaction itself, but the fact that the petitioner, as trustee, twice accounted, as mortgagee in possession, to the Court of Common Pleas, and at least the first account was approved by that court. (No proof was made as to approval of the second, though petition for approval is shown.) Notice was given in both instances, to Penn Athletic Club, and the court recited in its order notice given to all parties. The petition for approval alleged petitioner's status as mortgagee in possession and that because of the taxes paid no balance of income remained for distribution, and it asked that the court direct distribution of future available income under the terms of the mortgage, and approval of use of principal collected in payment of expenses. The court approved and directed distribution of income in the future, "in accordance with the provisions of Section 4 of Article VI of said mortgage indenture." In this we find, without collusion suggested, an adjudication of the petitioner's status as mortgagee in possession, and the distributability of the income by a local court, controlling here; *Freuler* v. *Helvering*, 291 U. S. 35; *Letts* v. *Commissioner*, 84 Fed. (2d) 760; *Estate of Sallie Houston Henry*, 47 B. T. A. 843 (holding the Pennsylvania Orphans' Court decree, on account filed, binding on question whether moneys were principal) ; *Susan B. Armstrong*, 38 B .T. A. 658 (holding binding the surrogate's decree on accounting that certain moneys were return of capital) ; and the decree plainly puts the petitioner in the position of acting and accounting under the mortgage, not as absolute owner.

We have here no case of afterthought, no contention devised later for tax purposes, but a legal position taken at the time of the transaction involved. When the deed was recorded on January 26, 1942, the petitioner was on record as considering the deed given under the mortgage and subject thereto and not in lieu of foreclosure and that there was no merger, as shown both by the release and the affidavit attached to the deed. By May 1942 it had claimed, and the club had agreed, that the insurance policy was being held as security under the mortgage. The agreement and release of May 22, 1942, recited that the conveyance had been subject to the mortgage lien and in compliance with the request therefor. On October 8, 1942, the petitioner filed its accounting on the theory of being mortgagee in possession, and on November 13, 1942, the decree of the Court of Common Pleas issued on the same basis. In addition, competent evidence, admissible and admitted, and only bearing out the recitations in the deed as to mort-

gage being preserved, explains the mutual intent of the parties that the deed was not to be absolute.

After considering the deed itself, the concurrent instruments executed, the understanding and intent of the parties, and their treatment of the matter, and the decree of the Court of Common Pleas, we conclude and hold that the petitioner was not taxable upon the income received in the taxable years. Having so concluded, we need not consider the ancillary questions, which depend upon the principal issue above determined.

Reviewed by the Court.

*Decision of no deficiency will be entered as to each taxable year.*

----

HARLAN, *J.*, dissenting: In January of 1941 the petitioner, as mortgagee-trustee for the first mortgage bondholders of the Penn Athletic Club Building, was confronted with a problem. The mortgagor, the Penn Athletic Club, had been in default under the terms of the mortgage for a period in excess of a year, and it owed real estate taxes on the mortgaged premises for the years 1939, 1940, and 1941 in the amount of $317,869.28 and was unable to meet even the minimum interest requirements under the mortgage. The Securities and Exchange Commission wanted to make a long term lease of the club building and was insisting that it be given immediate possession and that any lease be executed by petitioner as lessor. Petitioner knew that in order to make such a lease it would have to acquire ownership of the premises, inasmuch as it was the practice of the Court of Common Pleas of Philadelphia and the United States District Court not to permit a mortgagee in possession to make a lease for a period in excess of one year. Foreclosure could not be resorted to because of the time element required to obtain title by proceedings in equity or *scire facias*. Petitioner was, therefore, faced with a choice of either abandoning its efforts to negotiate the lease with the Securities and Exchange Commission or of inducing representatives of the club to make a voluntary conveyance that would permit it to lease the building for a long term. While the petitioner wrote. the club under date of January 13, 1942, requesting a conveyance pursuant to paragraph 14 of the supplemental mortgage agreement, the evidence indicates that thereafter it became necessary to enter into extended negotiations because a substantial number of the club's board of directors and members believed that the club was under "no legal compulsion" to remove itself and turn over the property to petitioner, and they felt "if it did so it would, for all practical purposes, result in the end of the Penn Athletic Club of Philadelphia as a needed and desirable

Philadelphia institution," and, to avoid such a result, they "offered serious resistance to the demands of the petitioner and its counsel that the property be abandoned by the Club." During these negotiations the suggestion was made by the president of the club that conveyance of the property would be made and possession given at once if the petitioner, as trustee for the bondholders, would release the club from all indebtedness and allow it to retain certain personal property. "Being of the opinion that the only way in which immediate possession of, and a deed of conveyance of the mortgaged premises could be secured by it from the * * * Club * * * would be through compliance with these conditions insisted upon by the * * * Club," the petitioner, acting upon advice of counsel and with the approval of representatives of the bondholders, decided to agree to these conditions.

Agreement was finally reached between petitioner and the club on January 19, 1942, and it is apparent that the club demanded a high price for the conveyance to petitioner of "all property subject to lien of said mortgage, including all real estate, buildings, machinery, furniture and furnishings, and the delivery of possession thereof by January 21, 1942." In consideration therefor the petitioner released and forever discharged the club "of and from all indebtedness due by the club under said Mortgage" (the principal indebtedness amounted to $2,580,000), "together with all interest accrued or accruing thereon" (interest for 1939 and 1940 amounted to approximately $200,000), "and all liability in connection with real estate taxes, past, present, or future, assessed against the said premises" (taxes assessed and unpaid at time of transfer amounted to $317,869.28). As additional consideration the petitioner also agreed to deliver to the club furniture, fixtures, and equipment having a value of $25,000, which was necessary to equip a new athletic club building, and to pay unsatisfied current indebtedness due by the club to other creditors, so far as might be found necessary, out of proceeds of the rest of the furniture and equipment after all other assets, including collectible receivables as of the date of the transfer, had been used for such purposes.

The conveyance was made on January 21, 1942, by deed in fee simple form which contained all the wording which the Pennsylvania statutes prescribe as necessary to pass fee simple title and to convey the entire estate of the club, as grantor. Purdon's Penna. Stats. Ann., title 21, ch. 1, secs. 2–3. It included "all the estate, right, title and interest, property, claim and demand whatsoever of it, the said Grantor, as well at law as in equity, of, in and to the same and every part and parcel thereof." The release executed the following day stated that this action was taken to permit the trustee to become the owner of the mortgaged premises.

I shall make no attempt to discuss the principles involved in the many cases cited by the majority other than to point out that in none of those cases do we have a transaction, such as we have here, where a mortgagor transferred to a mortgagee-trustee for first mortgage bondholders all of its interest in the mortgaged premises for an adequate consideration, consisting *in part* of a complete release and discharge of all indebtedness under the mortgage. That the consideration was adequate and fair is shown by the statement attached to the deed "that the premises are worth less than the mortgage, and therefore there is no equity over mortgage indebtedness."

If the conveyance had been made to petitioner as provided in paragraph 14 of the supplemental mortgage agreement, I would have no hesitancy in agreeing with the majority view that petitioner became a mortgagee in possession and, as such, was liable to account to the club. That paragraph contemplates a conveyance merely so that the mortgagee may have possession after default as additional security. It does not contemplate and was never intended to embrace a purchase of the mortgaged premises by the mortgagee from the mortgagor for an adequate consideration, and the deed does not state that the conveyance was made pursuant to paragraph 14. It is true that petitioner requested such a conveyance, but after that request was made the club saw the opportunity to drive a hard bargain and took advantage of that opportunity. It sold its interest in all of the property subject to the lien of the mortgage, with the exception of the $25,000 in furnishings and equipment which it was permitted to retain. Under such circumstances the question of intention, which is so important where a mortgagor makes an absolute conveyance for no consideration or for a nominal or inadequate consideration, is not a decisive factor because, "even though his intention or interest is to keep alive the debt and its incidental lien, he cannot do so, it is evident, if the conveyance of the mortgaged premises to such holder of the mortgage debt was made and accepted as a payment of the debt. In such case the debt is discharged, not as having been merged but as having been paid." *Tiffany, Real Property* (3d Ed.), vol. 5, p. 486.

It is well settled that after the making of a mortgage the mortgagor and the mortgagee may deal with each other as other individuals, and the mortgagor may, for an adequate consideration, convey to the mortgagee his interest in the mortgaged premises. *Tiffany, Real Property* (3d Ed.), vol. 5, p. 358. That is what happened in this proceeding. When the transaction was consummated the relationship of debtor and creditor between the club and the petitioner, as trustee for the first mortgage bondholders, ceased to exist. Moreover, there was no other debtor, inasmuch as C. Benton Cooper and the Rittenhouse Square Corporation had been eliminated in section 7 (a) of

the modified plan of reorganization approved by the Federal District Court on January 30, 1940, which provided that "All past, present and future indebtedness or obligations of C. Benton Cooper or of the Subsidiary Debtor [Rittenhouse Square Corporation] * * * of any kind or nature whatsoever, including Trustee's fees and commissions, under and by virtue of the terms of said First Mortgage, shall be waived and cancelled and said First Mortgage shall be satisfied of record." There being no debt existing to support the mortgage at the time of the conveyance to petitioner, it could not have been made as additional security. *Swinson* v. *Sodaman*, 20 N. E. (2d) 623, 626; 300 Ill. App. 31; *Holmburg* v. *Hardee*, 90 Fla. 787; 108 So. 211, 220. Inasmuch as the conveyance was not made as additional security, there seems to be no possible escape from the conclusion that it vested in petitioner, as trustee for the first mortgage bondholders, the ownership of all the property which had theretofore been subject to the lien of the mortgage, including the club building and excepting the $25,000 of furnishings and equipment which the club was permitted to retain. As owner, it negotiated leases with the Securities and Exchange Commission and with occupants of stores on the ground floor of the building. The majority opinion would relieve it from tax on rental income which amounted to $178,509.37 in 1942 and $209,084.78 in 1943. I think the respondent correctly determined that this rental income should be included in the gross income of petitioner.

ARUNDELL, MURDOCK, LEECH, and HILL, *JJ*., agree with this dissent.